THE HYGEIA DISTILLED WATER COMPANY *vs.* THE HYGEIA ICE COMPANY.

Third Judicial District, New Haven Jan. Term, 1900. ANDREWS, C. J.,. TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

While the name of a mythological person may be adopted as a trade-mark, yet if the same word has a generally accepted and well defined meaning in common speech, its honest use in that sense as part of a business or corporate name, to indicate a process or mode of manufacture and the quality of the product, will not be restrained by injunction, although some incidental damage results from such use. Unnecessary damage, however, will not be permitted, and a court of equity may, under certain circumstances, enjoin the alleged infringer from using the objectionable word in connection with the sale and delivery of his products, if purchasers are thereby deceived as to the origin and ownership of the articles.

Argued January 18th — decided April 4th, 1900.

ACTION to restrain the defendant from using the word "Hygeia" in its corporate name or otherwise, in connection with the manufacture and sale of ice, distilled water and

beverages made therefrom, and for damages, brought to the Superior Court in New Haven County and tried to the court, *Prentice, J.;* facts found and judgment rendered for the plaintiff upon the second count of the complaint, and appeal by the defendant for alleged errors in the rulings and findings of the court. *Error in part and cause remanded.*

This case was before this court at a former term, 70 Conn. 516, where the pleadings are sufficiently set forth. In the former trial the issues were found upon the first and third counts for the defendant, and upon the second count for the plaintiff, and judgment was rendered for the plaintiff. Upon an appeal from that judgment a new trial was granted.

At the commencement of the new trial the defendant moved for leave to plead additional and supplemental defenses to the first and third counts, setting up in bar of the same the former judgment in its favor upon said counts. The court denied the motion, on the ground that it appeared from the record that judgment had been rendered in favor of the defendant upon said counts, leaving only the second count to be tried. The defendant excepted to this ruling. The case was tried upon the second count only. During the trial the court, against the objection of the defendant, admitted certain evidence as detailed in the finding. To these rulings upon evidence the defendant excepted.

The court found in substance: (1) That the word "Hygeia" was one which might be appropriated and used as a trade-mark. (2) That the plaintiff had so appropriated said word, not only as a portion of a device but as an independent word or symbol to designate its products of artificial or distilled water and beverages made therefrom, as to entitle it to the exclusive use thereof as its trade-mark in the business of making and selling such water and beverages. (3) That the defendant, by its use of said word in connection with the business of making and selling distilled water and sundry beverages made therefrom, had infringed and is infringing upon the plaintiff's rights in a way calculated to deceive purchasers and the public, to the plaintiff's damage. (4) That the defendant, by its use of the said word in connection with the

manufacture and sale of ice, is not infringing upon any rights of the plaintiff.

The subordinate facts, from which these controlling facts are found, are set forth in detail and at great length in the record. In substance and effect the subordinate facts set forth in the present record do not materially differ from those contained in the former record (70 Conn. 516), where a statement of said facts may be found.

For the purposes of this case certain parts of the present finding are here stated, namely : —

" 15. As used in application to said products in the manner hereinbefore set forth, the name 'Hygeia' means and indicates in the trade and among the consuming public, widely, and especially in the New England and Middle States of this country, and wherever the plaintiff's products are sold or known, that each of said products to which said name is applied is the product of the plaintiff company, and such has always been its meaning when so used.

" 50. From a comparison of the bill-heads, advertisements labels, marks, etc., used by the defendant, with those used by the plaintiff, from the foregoing facts and from the attending circumstances and evidence offered upon the subject, I find that consumers and purchasers using ordinary care are liable to be misled, deceived, and confused as to the products of the plaintiff and the defendant (except ice) by the defendant's use of said name 'Hygeia' in any of the ways aforesaid, or otherwise, and that the continuance by the defendant of the use of said name 'Hygeia' as a part of its corporate name, or in any other of the ways hereinbefore described, or otherwise, in or in connection with the business of manufacturing and selling distilled water and beverages, is well calculated to induce the belief in purchasers that they are buying the plaintiff's products, when as a matter of fact they are buying the defendant's. I also find that the continuance by the defendant of the use of said word 'Hygeia' as a part of its corporate name, or in any other of the ways hereinbefore set forth, or otherwise, in or in connection with said business in water and beverages, will result in irreparable damage and injury to the plaintiff.

"66. No use of said name 'Hygeia,' prior to its appropriation and use by the plaintiff's assignor and by the plaintiff, inconsistent with the rights claimed by the plaintiff, was proved by the defendant."

In the reasons of appeal the errors assigned as to the foregoing paragraphs are stated as follows : —

"1. The facts set forth in the finding do not support the conclusions stated in paragraph 15, because it is shown that the name 'Hygeia' has been used in connection with water other than the plaintiff's products, upon the markets, and as applied to said other water products does not indicate that it is the product of the plaintiff company, or that such has always been its meaning ; and because of the further reason as shown in said finding, that the word 'Hygeia' and its various cognate forms have been applied in common use to other products as indicative of quality.

"2. The facts set forth in the finding do not support the conclusions stated in paragraph 50, because they do not show that any one has ever been misled, deceived, and confused as to the plaintiff's and defendant's goods ; and further, because they do not show that the use by the defendant of its corporate name has ever misled, deceived, or confused customers, purchasers, or the public generally ; and still further, because they do not show that the defendant's corporate name was ever associated in the minds of customers, purchasers and the public, with the purchase and sale of its products, but on the contrary, that the goods of the defendant were bought and sold by customers, purchasers and the public generally, by their distinctive trade-names.

"3. In finding the fact as stated in paragraph 66, because the same is a conclusion of law, and secondly, is without evidence to support it."

Upon the trial below the defendant made certain claims of law upon the facts found, which, together with such other parts of the record as it is deemed necessary to state, are sufficiently set forth in the opinion.

The court found the issue for the plaintiff upon the second count, "except that the acts of the defendant in making and

selling ice, as in said second count alleged, are not an infringment of the plaintiff's rights, and are not a damage to the plaintiff."

Such parts of the judgment as are material upon this appeal read as follows : " Whereupon it is adjudged that the defendant and its officers, agents, employees, and servants be and they hereby are each of them forever enjoined, under a penalty of one thousand dollars, (1) against transacting business under the name of 'The Hygeia Ice and Water Company,' and, (2) so long as the defendant retains the word ' Hygeia ' as a part of its corporate name, against putting up, bottling, selling, offering for sale, or delivering distilled water in liquid form or for drinking use, or using distilled water as an ingredient in the making and compounding of ginger ale, soda water, lithia water and other artificial mineral waters and (3) also against using in connection with the business of selling or delivering distilled water in liquid form or for drinking use, or in connection with the business of making, manufacturing, compounding, putting up, bottling, selling, offering for sale, or delivering ginger ale, soda water, lithia water, or other artificial mineral waters, in the preparation of which products distilled water shall have been used as an ingredient, the word ' Hygeia' in and upon its signs, advertisements, letter-heads, bill-heads, circulars, printed matter, wagons, bottles, jugs, siphons, labels, corks, seals, wooden boxes and cases, packages, receptacles, or any other thing used by any of them in such business, the use in and upon its signs and the other things named, and which is hereby enjoined, to include not only the use of said word ' Hygeia ' alone, but as well its use in the combinations ' The Hygeia Ice and Water Company,' ' The Hygeia Ice Company,' its use in combination with the name of the product (as ' Hygeia Water,' ' Hygeia Distilled Water '), and in combinations similar to any of said combinations, whether as a part of its corporate name, or not. Nothing in this order shall be construed as preventing the use by defendant of said word ' Hygeia ' in the business of manufacturing and selling ice, or the use by defendant of its present corporate name in said ice business, so long

as it refrains from the manufacture and sale of such distilled water and beverages made therefrom."

The defendant requested the court to correct the finding in certain particulars, and the court refused to do so. The evidence contained in the record upon which this request is certified, is "a transcript of a portion of the testimony offered in said case," and "a transcript of certain depositions offered by the defendant in evidence upon the trial of said case."

*Henry Stoddard* and *Howard C. Webb*, for the appellant (defendant).

*Henry C. White* and *Leonard M. Daggett*, for the appellee (plaintiff).

HAMERSLEY, J. The defendant is not entitled to have the finding of facts corrected as requested. The facts which it requested the court to find are not admitted or undisputed facts, nor is it claimed that such facts were found without any evidence, nor does it appear that the evidence certified as to these facts embraces all the evidence adduced with reference to them. Under repeated decisions of this court, the finding, under these circumstances, must stand as made.

The denial of the motion for leave to file additional defenses to the first and third counts of the complaint did the defendant no harm. The court treated those counts as out of the case, and upon that view the defenses in question were entirely unnecessary.

When this case was before us upon a former appeal, it was claimed by the defendant that the word "Hygeia" could not be adopted as a trade-mark, because it has become a term merely descriptive of the character and quality of the goods to which it is applied, as healthful or health-giving. 70 Conn. 533. The trial court had decided that the word as adopted by the plaintiff was entitled to protection, and we then said we thought the court correctly decided against the contention of the defendant, "upon the knowledge of this matter acquired by the exercise of its power of judicial cog-

nizance, aided by evidence, and by reference to standard authorities upon the subject."

The former judgment enjoined the defendant against using the word "Hygeia" upon or in connection with the sale of its distilled water products, and further enjoined it against using the word in its corporate or business name while dealing in those products. We held that the latter part of the judgment was not supported by the facts found, and, therefore, we did not consider the question whether the plaintiff was lawfully entitled to protection against the use of the word "Hygeia" in such manner. After a new trial resulting in a similar judgment, the case now comes before us on an appeal which presents anew the two questions: Is the plaintiff entitled to protection? Can that protection be extended to a prohibition of the use of the word "Hygeia" in the defendant's corporate name? On the last question we have had no occasion heretofore to intimate any opinion.

We still think that the word "Hygeia" is not so merely descriptive of the quality of the goods as to render it legally impossible for the plaintiff to acquire an interest in it as a trade-mark, in the manner found. It is a name of a mythological personage. The trial court has found that it was adopted as such by the plaintiff, in combination with a figure of the goddess; that it was used on the plaintiff's products only as a symbol to indicate that they were its genuine products, and as a result of the plaintiff's conduct has become closely associated in the mind of the trade with its products, and, when attached to them, indicates to the consuming public that each product to which it is so attached is the product of the plaintiff.

It was lawful for the plaintiff to so appropriate the name of a mythological person. Had it taken the name of Juno or of Minerva, no question as to its right could arise. But it chose a name which is also an English word with a settled meaning. The plaintiff disclaims the use of the word with that meaning; and the court finds that it was not adopted with that meaning. The case is in this respect a peculiar one. We feel very strongly the necessity of great caution

in permitting the use of a word as a trade-mark, so as to limit in any way its use with its legitimate meaning. "The general rule is against the appropriating mere words as a trade-mark." *Caswell* v. *Davis*, 58 N. Y. 223, 235; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandf. Sup. Ct. 599; *Canal Co.* v. *Clark*, 13 Wall. 311, 322; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537, 546. "The monopoly of use granted by the law of trade-marks should not be extended to embrace terms of doubtful signification." *Beadleston & Woerz* v. *Cooke Brewing Co.*, 74 Fed. Rep. 229, 233.

This is not a case of first adoption; it is one where the word has in fact through long use actually acquired a signification when attached to the plaintiff's products, simply of ownership and origin. So used it is in fact a mere symbol which conveys the idea of origin and nothing more; and it is further found that when attached to products of other dealers it is in fact regarded as a mere symbol conveying the same idea, *i. e.* that the products are made by the plaintiff. The labors of the plaintiff have created this condition, and are entitled to some protection unless it is forbidden by a positive rule of law. We are not prepared to say under such circumstances that the name of a mythological person is entitled to no protection as a trade-mark, simply because there is an English word derived from the same root which cannot be so monopolized. Yet it is evident that the protection must be different from that awarded where there is no such complication. One may adopt his own name as a trade-mark, but he cannot prevent another having the same name from its honest use in the same business, although he may be injured thereby. "The disadvantages attending the choice of the name of a person as a mark affect every result flowing from such choice." *Wm. Rogers Mfg. Co.* v. *Simpson*, 54 Conn. 527, 571; *Rogers & Brother* v. *Rogers*, 53 id. 121, 156. A trade-mark cannot monopolize the name of a place nor any substantive commonly used in language. *Burton* v. *Stratton*, 12 Fed. Rep. 696, 700. But the name of a city may become in fact so associated with one's work, as designating its origin and ownership, as to become entitled to protection as a trade-mark, subject however to the

infirmities inherent to such a mark. And so other manufacturers in the same place may honestly use the geographical name in connection with the same work, notwithstanding the incidental injury involved in such use. *American Waltham Watch Co.* v. *United States Watch Co.,* 173 Mass. 85. In such cases the right of one to the credit of his own labor must accord with the right of all to the use of a common language and to free competition; and a court of equity seeks to give reasonable protection to both rights without destroying either. The success with which this can be done depends somewhat on the subtilty of the complication; that may be so great that the court will refuse all protection. And so with the plaintiff, while entitled upon the facts found, to a protection against any one else using its trade-mark on similar products as indicating their origin, it is not entitled to a protection which may result in a partial monopoly of the English word "Hygeia."

The trial court has enjoined the defendant against dealing in distilled water and its various products, under any corporate or business name which contains the word "Hygeia." There is here no question as to the use of a corporate name in this business which by reason of similarity unlawfully infringes the plaintiff's interest in its own corporate name, nor of a dishonest and fraudulent use of the name by the defendant to the injury of the plaintiff; these questions are settled in favor of the defendant by the final judgment on the first and third counts. The sole question, as affecting the point under discussion, is this: Has the defendant a right to use the word "Hygeia" in its corporate or business name, as indicative of its mode of manufacture, notwithstanding some incidental injury results to the plaintiff's business from that use?

It is found as a fact that the defendant manufactures artificial ice from filtered and distilled water, by a peculiar process calculated to produce an absolutely pure ice, and for that reason in good faith and in ignorance of the plaintiff's existence, it used the word "Hygeia" to associate its meaning with the ice produced by this special process involving filtra-

tion and distillation, and that since its incorporation, in pursuance of a design entertained at that time, it has dealt in the water so distilled and filtered in its liquid as well as in its frozen form, and in various products of that water. If this is a correct use of the word, the defendant's right to use it in this manner cannot be destroyed by the plaintiff's adoption of its trade-mark. We must, therefore, examine the real significance of the word more carefully than seemed necessary at the former hearing.

The Greek word *ὑγίεια* means health; when the daughter of Esculapius was deified as the goddess of health she was named *Hygieia*. The latin word *salus* means health, and this name also was given to the Roman goddess of health. Both words passed into the English language. The name of the divinity was confined to the Greek form. The derivatives of *salus* came into common use. The Greek word for health was at first appropriated mainly if not wholly to medical literature; but within the past century it has passed, with many derivatives, into common use. We find its definition, when used as a noun, in medical literature in the title of a book published in 1628. "*Hygieia, id est bonae valetudinis conservandae thesaurus lucupletissimus.*" It is used with a similar meaning in many medical books and journals, French and German as well as English, (although its primary meaning seems always to have been health). See Foster's Ency. Dict. It is used in this sense, in 1802, in "Beddoes Hygeia: or Essays Moral and Medical." In 1841 it is used to indicate the means or system of preserving health, by Emerson in his "Essay on Nominalist and Realist." Emerson's Essays, 2d Series, p. 226. Dr. Richardson uses it with a similar meaning in an address to the Social Science Association on the arrangement of a city so as to reduce the rate of mortality. "Hygeia, or the City of Health," Chambers Journal, January 20th, 1877. And in the Oxford English Dictionary it is defined as "a system of sanitation or medical practice." During the present century, and especially during the past forty years, the word has been freely used with an adjective meaning (as appears from the finding), as ex-

pressing the medically healthful property or effects of places, food, clothing, etc. This meaning, of a means or method of preserving health, it has always had in medical literature, and for a long period in general literature, although the transfer from medical to general literature has not been recognized by many of the standard dictionaries; the recognition of such changes often follows slowly. But the authority of the Oxford English Dictionary is of the highest; and it establishes, not a new use, but the recognition of a long-continued use.

We cannot doubt that *hygeia*, whether used as a substantive to express a process or means of preserving health, or with an adjective sense to describe an object as resulting from the operation of hygeian method, is an English word to the use of which with that meaning every one is entitled.

It is suggested that such meaning of the word arose from the sale of the plaintiff's products. This is palpably and even absurdly untrue.

The rapid increase in the use of "Hygeia" and its derivatives, commenced long before the plaintiff's business enterprise was conceived, and is due to the force of a wide spread social movement which has made professional investigation of the laws of health a common study, which demands the application of the rules of hygeia to the preparation of everything we eat, drink or wear, to the construction and maintenance of our houses, factories and public buildings, and to the arrangement and care of our cities. So strong and wide spread has this movement been, that to express its exaggerated operation we have found it necessary to coin and adopt into the language the word hygeiolatry.

*Hygeia* is a word of peculiar value. By reason of its passage into general literature from the medical, it has a significance which the derivatives of *salus* failed to express. The idea conveyed by salubrity and salubrious is quite distinct from that conveyed by hygeia and hygienic. It is this meaning of the word, as expressive of the modern care for health by scientific methods, that has brought it into common use and makes it most valuable.

The defendant therefore has a right to use the word *hygeia*

in its corporate and in its business name, as signifying the claim that its products of water, whether congealed or liquid, are prepared in accordance with the rules of hygeia; and any injury the plaintiff may suffer in its business from such honest use is the necessary result of its choosing as a trade-mark a word which not only was a symbol which it might appropriate, but which was also a valuable word in language which the law does not permit to be monopolized.

So far as attaching the mark " Hygeia " to the defendant's goods is in fact a practical representation that such goods are made by the plaintiff, the plaintiff is entitled to protection; but that protection cannot be extended to preventing the defendant from using in good faith, with its natural signification, the English word *hygeia* in its corporate name or business name as descriptive of its method of manufacture. Any injury which results to the plaintiff from such use is not in violation of the plaintiff's rights and is not due to a wrongful act by the defendant, but solely to the difficulties the plaintiff assumed in its selection of such a mark.

There ought not to be a new trial; the erroneous portions of the judgment are distinct from and independent of the other portion, and may be reversed without disturbing it. *Sherwood* v. *Sherwood*, 32 Conn. 1, 15; *Taft* v. *State*, 39 id. 82, 85; *Middlebrook* v. *State*, 43 id. 257, 270.

That portion of the judgment which enjoins the defendant against using in connection with the business of selling or delivering distilled water in liquid form or for drinking use, or in connection with the business of making, manufacturing, compounding, putting up, bottling, selling, offering for sale or delivering ginger ale, soda water, lithia water, or other artificial mineral waters in the preparation of which products distilled water shall have been used as an ingredient, the mark " Hygeia," either alone or in combination with the name of the product (as " Hygeia Water," " Hygeia Distilled Water ") in and upon its signs, advertisements, letter-heads, bill-heads, circulars, printed matter, wagons, bottles, jugs, siphons, labels, corks, seals, wooden boxes and cases, packages, receptacles, or any other thing used by it in such business,

is affirmed; the residue of said judgment is reversed and set aside.

The judgment of the Superior Court is erroneous in part, and the cause is remanded to be proceeded with according to law.

Costs in this court will be taxed in favor of the appellant.

In this opinion the other judges concurred, except TOR-RANCE, J., who dissented.