## GRAYSON *et al.* v. DURANT *et al.*

No. 3328.    Opinion Filed November 24, 1914.

(144 Pac. 592.)

1.    **INDIANS — Allotment — Enrollment Records—Hearsay Evidence.**
In cases involving the validity of conveyances of lands allotted
to members of the Five Civilized Tribes, made prior to the
taking effect of Act Cong. May 27, 1908, c. 199, 35 St. at L.
312, where there are living witnesses in court who testify to the
age of the allottee, the enrollment records of the Commission
to the Five Civilized Tribes as to the age of such allottee are
purely hearsay and inadmissible in evidence.

2.    **APPEAL AND ERROR—Necessary Parties.**  A judgment affect-
ing distinct and independent parcels of land, and adjudging
the title thereof to be in two different persons wholly discon-
nected in interest, is divisible; and one of such persons is not
a necessary party to an appeal involving only the rights of the
other in a particular parcel of such land.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Action by Alice V. Grayson against Thomas J. Durant and
others.  Judgment for certain defendants, and plaintiff and other
defendants bring error.  Affirmed.

*Merwine & Newhouse,* for plaintiffs in error.

*Owen & Stone, Mark L. Bozarth,* and *C. W. Holbrook,* for
defendants in error.

BLEAKMORE, J.    This action was commenced in the court
below by one of the plaintiffs in error, Alice V. Grayson, to re-
cover certain lands alleged to have been allotted to her deceased
husband, Israel Grayson, as a freedman of the Creek Nation.
She alleged that on the 9th day of May, 1910, Israel Grayson
died, a minor without issue, and left surviving him as his only
heirs at law the plaintiff, Alice V. Grayson, his widow, and
Dinah Bruner, his mother, who inherited said lands.  It is fur-
ther alleged that on the 9th day of March, 1906, and on the 25th

day of March, 1907, Israel Grayson executed deeds attempting
to convey a portion of his allotment, exclusive of his homestead,
to one Scott Yeatman, who thereafter executed warranty deed
to the same to Thomas J. Durant; that on the 8th day of September, 1908, Israel Grayson and Alice V. Grayson executed a warranty deed to the same land to one Thomas F. Crosby, who in
turn executed a deed thereto to the said Durant; that on the 16th
day of November, 1907, Israel Grayson and his wife executed
a warranty deed to the same lands to Standford and Evans, who
thereafter executed a deed therefor to the said Durant; that on
the 17th day of November, 1908, the said Israel Grayson executed a warranty deed to the same land to the said Durant; that
on the 28th day of July, 1910, said Dinah Bruner, by power of
attorney, attempted to convey to W. N. Martin and P. H. Stein
certain interests in the allotment of said Israel Grayson; that on
the 27th of July, 1908, and the 17th day of August, 1908, said
Israel Grayson executed a warranty deed to one Walton C. Frank,
attempting to convey that portion of his lands allotted as a homestead; that at the date of the execution of all of said instruments
the said Israel Grayson was a minor, and that all of said conveyances were void, and clouds upon the title of the plaintiff.

One J. W. Foster, administrator of the estate of the said
Israel Grayson, filed a cross-petition in said action, alleging that
it was necessary to sell said lands to pay the debts of the deceased allottee, and praying that title to said land be quieted
and the same sold for such purpose. Thomas J. Durant answered, alleging that Israel Grayson, at the time of the execution
of said deeds under which he claimed, conveying the surplus allotment, had arrived at his majority. Dinah Bruner answered,
denying that Alice V. Grayson was the widow of deceased, or
entitled to any part of the lands involved, and, alleging that she
was the sole heir of Israel Grayson, prayed for a cancellation of
the deeds referred to in the petition, and alleged that the power
of attorney to Martin and Stein had been revoked. Martin and
Stein replied, alleging that they had an undivided one-half interest
in whatever interest the said Dinah Bruner inherited in said
lands.

Trial was had to a jury, and judgment rendered for defendants Thomas J. Durant and Walton C. Frank, adjudging said Durant to be the owner of the surplus allotment of 120 acres and Frank the owner of the homestead allotment of 40 acres. The sole question at issue was the age of the said Israel Grayson at the time of the execution of the deeds referred to. The jury found that at the date of execution of each of said deeds Israel Grayson was of full age.

It is conceded that under the provisions of Act Cong. April 21, 1904, c. 1402, 33 St. at L. 189, providing that:

"And all restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed"

—the deeds in question under which Durant claims are valid, if at the time of the execution thereof the grantor had arrived at his majority. Walton C. Frank is named in the proceeding as a defendant in error, but there has been no service of summons in error upon him or waiver thereof.

While the entire allotment of Israel Grayson is involved, yet removal of cloud upon the title and recovery of distinct parcels of land is sought against different individuals, disconnected in interest, claiming under separate conveyances, and the judgment adjudging the title of 120 acres thereof to be in defendant in error Durant, and the remaining 40 acres thereof to be in the defendant Walton C. Frank, is a judgment for distinct portions thereof, independent of each other, described in separate and individual conveyances and is in its nature severable.

The errors assigned for a reversal of the cause are: (1) The trial court erred in refusing to charge the jury that the enrollment records of the Commissioner to the Five Civilized Tribes are conclusive evidence of the age of the deceased allottee; (2) in instructing the jury that the census card offered as such enrollment record was *prima facie* and not conclusive evidence of such age; and (3) in instructing the jury that if they found from the "testimony," as distinguished from the "evidence," that the allottee was not of age, they would so indicate in their verdict.

Grayson et al. v. Durant et al.

It is the contention of the plaintiffs in error that the census card offered in evidence as constituting the enrollment records of the Commissioner to the Five Civilized Tribes is, under the terms of an act of Congress approved May 27, 1908 (35 St. at L. 312, c. 199), providing:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman"

—conclusive evidence of the age of the allottee Israel Grayson, and, it being shown by said card that at the time of the execution of the deeds in question the allottee was under the age of 21 years, that the court should have instructed the jury to return a verdict in favor of the plaintiff.

It will be remembered that the conveyances under which the defendant in error Thomas J. Durant claimed that portion of the allotment exclusive of the homestead were executed prior to the taking effect of said act of Congress. The question as to whether the provisions of said act of Congress are applicable to transactions concluded prior to the date it became effective was determined by the United States Circuit Court of Appeals for the Eighth Circuit in *Malone v. Alderdice*, 212 Fed. 668, the court using the following language:

"The Commission to the Five Civilized Tribes which made the enrollment of their citizens and freedmen was a quasi judicial tribunal empowered to determine who should be enrolled and what lands should be allotted and in what way it should be allotted to every citizen and freedman, and its adjudication of these questions, and of every issue of law and fact that it was necessary for it to determine in order to decide these questions, is conclusive and impervious to collateral attack. But its determination, recital, or report regarding issues not material to its answers to the questions who should be enrolled, and what lands should be allotted to them, and how, is, in the absence of special legislation, such as the Act of May 27, 1908, without judicial or other conclusive effect. *Kimberlin v. Com-*

*mission to Five Civilized Tribes,* 104 Fed. 653, 662, 44 C. C. A. 109, 112. * * * The result is that in the determination of rights which accrued, and of the effect of proceedings which were concluded, prior to May 27, 1908, the enrollment records of the Commission are not conclusive evidence of the age of any Indian citizen or freedman. *Hegler v. Faulkner,* 153 U. S. 109, 117, 118, 14 Sup. Ct. 779, 38 L. Ed. 653; *Williams v. Joins,* 34 Okla. 733, 126 Pac. 1013, 1015; *Perkins v. Baker,* [41 Okla. 288] 137 Pac. 661, 663."

The same question was also before this court in the case of *Scott v. Brakel et al., ante,* 143 Pac. 510, in which it was held:

"In the determination of rights which accrued, and of the effect of transactions concluded, prior to May 27, 1908, the enrollment records of the Commission are not conclusive of the age of any Indian citizen or freedman enrolled thereon."

The same question was again before this court in the case of *Phillips et al. v. Byrd, ante,* 143 Pac. 684, in which it was held:

"The Act of Congress of May 27, 1908 (35 St. at L. 313), in part provides: '* * * The enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizens or freedmen.' *Held,* that such act is not, nor was it intended to be, a rule of evidence; but the purpose of said act is to prescribe terms and conditions upon which members of the Five Civilized Tribes of Indians may alienate their lands, and to prescribe a fixed and uniform rule by which those contracting with such members of said tribes could determine the exact date minors may reach their majority for the purpose of alienating their lands. That part of said act of Congress, quoted *supra,* has no application to a transaction relating to a contract or sale of lands completed prior to the date said act took effect."

The court instructed the jury as follows:

"The court instructs the jury that there has been introduced in evidence in this case an instrument purporting to be a certified copy of the age roll of the Commission to the Five Civilized Tribes. You are instructed as a matter of law that said card is *prima facie* evidence of the age of the allottee Israel Grayson, but is not conclusive evidence of his age, and is to be considered by you in this case in arriving at your verdict."

The court further instructed the jury:

"The jury are further instructed that as to the first question submitted to you, to wit: Was Israel Grayson 21 years of age on March 9, 1906, when he executed a deed to Scott Yeatman?—the burden is on plaintiff to establish that he was not 21 years of age at that time. Therefore, if you find that plaintiff has not established the fact that he was not 21 years of age at that time, you will make the finding that he was 21 years of age; if from the facts and circumstances of this case you find that plaintiff has established by a preponderance of the testimony that Israel Grayson was not of age at that time, you will so indicate as to the first question submitted to you."

It is contended by plaintiffs in error that by the use of the word "testimony" in this instruction the jury was precluded from a consideration of the census card offered in evidence, for the reason that testimony includes only oral statements of witnesses. With this contention we are unable to agree. While, technically, it is true that there is a difference between the terms "testimony" and "evidence," and the former relates to oral statements of a witness, and the latter includes all that may be submitted to a jury, whether it consists of such statements of witnesses, or papers, documents, and records, yet in common parlance they are used synonymously and understood to signify the same thing, and it is improbable that the jury in arriving at their verdict made any distinction between the meaning of the terms.

In *Mann v. Higgins*, 83 Cal. 66, 23 Pac. 206, the Supreme Court of California held:

"It is not reversible error for the court, in instructing the jury, to use the word 'testimony' instead of 'evidence,' as it is entirely improbable that the jury was misled by the inadvertence."

In *Noyes v. Pugin*, 2 Wash. 653, 27 Pac. 548, the Supreme Court of Washington held:

"An instruction that plaintiff must establish the material allegations of his complaint by preponderance of the 'testimony' is not erroneous. It will be presumed that the jury understood the word as referring to all the evidence."

To the same effect are *Welch v. Miller*, 32 Ill. App. 110, and *Jones v. Gregory*, 48 Ill. App. 228.

But, conceding that the jury were misled by the inadvertent use of the word "testimony," instead of "evidence," in the instruction, and by reason thereof gave no consideration to the census card, still the substantial rights of the plaintiffs in error were not prejudiced thereby, for the reason that the enrollment records of the Commissioner to the Five Civilized Tribes (in a case like the one before us, where there are living witnesses present in court who testify with reference to the fact attempted to be proved thereby) are purely hearsay and inadmissible for any purpose. Nowhere in the Act of Congress of May 27, 1908, is it provided that the enrollment records shall be *prima facie* evidence, or any evidence, of the age of an allottee in cases involving the validity of conveyances made prior to the time it took effect.

In *Hegler v. Faulkner et al.*, 153 U. S. 109, 14 Sup. Ct. 779, 38 L. Ed. 653, this identical question was before the Supreme Court of the United States, and it was said:

"And it may be admitted that the decision of the special Indian agent, in identifying the Indian half-breeds entitled to participate, and in allotting the portion of each, would, in the absence of fraud, be conclusive. *Wilcox v. Jackson*, 13 Pet. 498, 511 [10 L. Ed. 264]. Conclusiveness is a characteristic of the judgment of every tribunal acting judicially, whilst acting within the sphere of its jurisdiction, where no appellate tribunal is created. But such conclusiveness is restricted to those questions which are directly submitted for decision. In the case in hand, doubtless, the identity of the half-breed George Washington, and his right to receive the land in question as his share of the lands appropriated by treaty, were finally found. But neither the treaty, the act of Congress, nor the instructions of the department contemplated any special inquiry into the ages of the Indians. * * * We do not deem it necessary to discuss this question at greater length. Our conclusion is that the court did not err in excluding the list offered. It was not an official record, intended as a mode of preserving the recollection of facts, nor was it based upon the personal knowledge of the party making the entry. It was mere hearsay."

This holding of the court has been quoted with approval in *Malone v. Alderdice* and *Phillips et al. v. Byrd, supra.*

In *State v. Miller,* 71 Kan. 200, 80 Pac. 51, 6 Ann. Cas. 132, it was said by the Supreme Court of Kansas:

"To show the age of the prosecutrix, there was received in evidence a translation of a copy of a parish record in Russia. This purported to give the ages of the members of the Neidens family and other matters of family history. The extract from the parish record was made by the pastor just before the family left Russia. It was made at the instance of John Neidens, the father of Mollie, and in his presence. The body of the extract was written in German, and the attached certificate made by the pastor was in Latin. So much of it as related to Mollie's age was received in evidence, and translated to the jury. The document was not certified, nor authenticated in such a way as to make it receivable as an official record. It was not offered or admitted, however, as a copy of the parish record, but was received as a family record. Was it admissible as a matter of pedigree or family history? It is argued that it is not the declaration of the Russian clergyman who made the document, but that, as it was made at the request and in the presence of Mr. Neidens, it was in fact his entry and his declaration. If it be granted that it was his own act, still the entry and declaration was only secondary evidence, and is governed by the rules for the admission of such evidence. This class of evidence is admitted under certain restrictions because of necessity and the improbability of the evidence being false. On the ground of necessity it is received because the facts as to pedigree and relationship cannot be shown by living witnesses after the lapse of many years, and, if family reputation were not admissible, in many cases the real facts could not be established. The improbability of falsehood is that at the time the entries or statements are made those who made them are acquainted with the facts. They have no reason to distort them, and, if they did, their falsity could easily be detected and corrected at that time. In the admission of such entries or declarations there are limitations as to those who may make them, and also as to the character of the declarations. Judge Elliott, in his work on Evidence, classified the limitations as to the declarant as follows: '(1) The declarant must be dead; (2) the declarant must be a legal relative; and (3) there must be no desire actuating the declarant to make a false statement.' And he makes the following classification as to the declaration: '(1) The declaration must be relevant to a matter of pedigree; (2) the information in the declaration must come from qualified persons; and (3) the declarations must be *ante litem motam.*

But the declarations are not limited to any particular form.'
1 Elliott on Evidence, secs. 364, 469. Treating Mr. Neidens
as the declarant—the one who made the entry—his declarations
are not available, as he was alive and in court, and actually
gave testimony in regard to his daughter's age. Entries in
family Bibles and registers may be received to prove the age
of children; but they are only secondary evidence, and are neces-
sarily excluded when better evidence may be produced. In
*Robinson v. Blakely,* 4 Rich. [S. C.] 586, 55 Am. Dec. 703, it
was held that a father's declarations, or his entries of the birth
of his children in a family register, were not admissible in evi-
dence where he is alive and competent to testify. In *Young v'
Shulenberg,* 165 N. Y. 385, 59 N. E. 135, 80 Am. St. Rep.
730, it was said that: 'Pedigree is the history of family descent,
which is transmitted from one generation to another by both
oral and written declarations, and unless proved by hearsay
evidence it cannot, in most instances, be proved at all. Hence
declarations of deceased members of a family, made *ante litem
motam,* are received to prove family relationship, including mar-
riages, births, and deaths, and the facts necessarily resulting
from those events. * * * Before the declarations can be re-
ceived, however, as evidence of pedigree, it must appear that
the person making them was a member of the family, and
that he is dead, incompetent, or beyond the jurisdiction of the
court.' *People v. Mayne,* 118 Cal. 517, 50 Pac. 654, 62 Am.
St. Rep. 256, was a conviction for rape upon a child under
the age of fourteen years. In support of testimony as to her
age there was offered in evidence an entry in a family Bible,
which was made by the mother, who was present at the trial
and gave testimony as to her daughter's age. It was held that:
'An entry in a family Bible is but a declaration made out of
court, and not under the sanction of an oath. It is hearsay
evidence, and is not admissible where the person making it is
alive, and capable of being examined as a witness in the case.'
There was a further holding that 'a mother who has testified
to the date of the birth of her child cannot be supported or cor-
roborated by an entry of such date by her in the family Bible.'
*Greenleaf v. Railroad Co.,* 30 Iowa, 301, was an action to re-
cover damages for personal injuries, and, as the age of the
injured person was an element in determining the amount of
damages, the plaintiff was permitted to show the date of birth
from an entry in the family Bible. This ruling was held to be
error upon the ground that it had not been shown that the
person who made the entry was dead. Authorities of the same

purport are: *Smith v. Brown,* 8 Kan. 609: *Shorten v. Judd,* 56 Kan. 43, 42 Pac. 337, 54 Am. St. Rep. 587; *State v. Snover,* 63 N. J. Law, 382, 43 Atl. 1059; *Campbell v. Wilson,* 23 Tex. 253, 76 Am. Dec. 67; *Smith v. Geer,* 10 Tex. Civ. App. 252, 30 S. W. 1108; *People v. Sheppart,* 44 Hun [N. Y.] 565; *Leggett v. Body,* 3 Wend. [N. Y.] 376; *Dupoyster v. Gagani,* 84 Ky. 403, 1 S. W. 652; 22 A. & E. Ency. of L. (2d Ed.) 644; 1 Greenleaf on Evidence, sec. 208; Taylor on Evidence, sec. 641."

In *Bailey v. Fly,* 35 Tex. Civ. App. 410, 80 S. W. 675, the Texas Court of Civil Appeals, in holding that an entry by the custodian of baptismal records of a church as to the date of birth was inadmissible in evidence, said:

"It is doubtless true, upon a familiar principle, that the baptismal record would have been admissible to prove the fact and date of baptism, and any incidental issue which that fact might tend to establish, for that fact was within the peculiar knowledge of the person making the record, it was his duty to make it, and he is shown to be dead. But the date of birth was not within his knowledge, and must have been acquired by hearsay. In *Town of Union v. Town of Plainfield,* 39 Conn. 564, it is held that an entry in a family Bible of the place of birth is not admissible on that issue."

See *Kobbe v. Price,* 14 Hun (N. Y.) 55.

In *Connecticut Mutual Life Insurance Co. v. Schwenk,* 94 U. S. 593, 24 L. Ed. 294, it was held by the Supreme Court of the United States that the minute book of a lodge of Odd Fellows, in which the age of the insured was recorded in the usual manner of keeping the records of the lodge, the entry being made by the secretary of the lodge, was inadmissible to prove age.

It is true that the conveyance upon which the title of Walton C. Frank is predicated was executed after the Act of Congress of May 27, 1908, *supra,* took effect; but inasmuch as no summons in error was issued or served upon him, and no waiver thereof was had, he is not a party to this appeal, and any errors assigned affecting that branch of the judgment decreeing title to a distinct parcel of land to be in him are not subject to review here. A judgment affecting distinct and independent parcels of land is divisible, and therefore the said Frank is not a necessary party to this proceeding. *Village of Lee v. Harris,*

206 Ill. 428, 69 N. E. 230, 99 Am. St. Rep. 176; *Hygeia Water Co. v. Hygeia Ice Co.,* 72 Conn. 646, 45 Atl. 957, 49 L. R. A. 147; *Western Cornice Mfg. Works v. Leavenworth,* 52 Neb. 418, 72 N. W. 592; *City of St. Louis v. Lanigan,* 97 Mo. 175, 10 S. W. 475; *Dickerson v. Chrisman,* 28 Mo. 134; *Moersdorf v. New York Telephone Co.,* 84 N. J. Law, 747, 87 Atl. 473.

It follows, therefore, that the judgment of the trial court should be affirmed; and it is so ordered.

All the Justices concur, except KANE, C. J., absent and not participating.