The GOODYEAR TIRE & RUBBER COMPANY

v.

TOPPS OF HARTFORD, INC., Topps of East Hartford, Inc., Topps of Berlin, Inc., Topps-Stanley, Inc., Betz-Middletown, Inc., d/b/a Topps, Betz-New Haven, Inc., d/b/a Topps.

Civ. No. 10769.

United States District Court
D. Connecticut.

Jan. 29, 1965.

off goods manufactured by others of materials made by others as goods manufactured by the plaintiff or from materials made by the plaintiff.

Affidavits were filed by the plaintiff in support of its motion for a preliminary injunction. The court ordered a rule to show cause why a preliminary injunction should not be issued. At the hearing on the motion, further affidavits and exhibits were introduced by the plaintiff, and counter-affidavits were then introduced by the defendants. These related primarily to the plaintiff's claim of specific incidents of actual "passing off" of other goods as that of the plaintiff. Some evidence was admitted to prove that the plaintiff is a large corporation whose stock is publicly held. It manufactures many products, which it has classified into ten groups, including, among others, tires; defense items, including advance guidance systems, tactical missile systems; metal products, consisting largely of rims for vehicles; industrial goods; chemicals; and plastic films.

The goods which the defendants are charged with unlawfully "passing off" consist of rainwear for adults and children manufactured out of cloth coated with a plastic film. The plaintiff does not manufacture or sell such articles of apparel, but it does sell materials of that nature to manufacturers who make similar garments from it for sale to retailers.

Roger B. McCormick, McCormick, Paulding & Huber, Hartford, Conn., for plaintiff. Francis C. Browne, Browne, Schuyler & Beveridge, Wm. E. Schuyler, Jr., Washington, D. C., of counsel.

J. Read Murphy, Hartford, Conn., Abraham Friedman, Brooklyn, N. Y., for defendants.

BLUMENFELD, District Judge.

This is an action by The Goodyear Tire & Rubber Company against six corporate defendants, each of which operates a discount department store under the name "Topps," as part of a retail chain. The plaintiff seeks an injunction and damages for unfair competition in passing

### Jurisdiction

This is a diversity suit, although the complaint alleges also that it is a statutory action arising under 15 U.S.C. § 1051 et seq., The Lanham Act. The plaintiff expressly disclaims any reliance upon misuse of a registered mark or cause of action under the Lanham Act, 15 U.S.C. §§ 1115, 1116. Jurisdiction rests only upon 28 U.S.C. § 1332 and not upon 28 U.S.C. § 1338 which grants original and exclusive jurisdiction to district courts over civil actions arising under any federal trademark statute.

### Nature of Case

Primarily, the plaintiff makes the claim that the word "GOODYEAR" in its corporate name, "The Goodyear Tire & Rubber Company," has acquired a secondary meaning as indicating its products exclusively, particularly all consumer goods made of rubber or synthetic substitutes for rubber. It has spent many millions of dollars in advertising its several product lines and now has an advertising budget of some $30,000,000 a year. No break down of that sum was made to show how much of it is spent in advertising its products which may be used for making rainwear. No evidence was introduced to prove what kind of materials manufactured by the plaintiff are used in making rainwear, nor how much of its products are used for that purpose, other than an exhibit consisting of one full-length coat of gun-metal colored "Vinylfilm" made by Cable Raincoat Co. of Boston. It contends that this advertising and the efforts of the plaintiff to establish and maintain extremely high standards of quality for the products which it makes and sells has identified its products to purchasers to such an extent that GOODYEAR has come to mean the plaintiff and its products exclusively. It has a reputation as a manufacturer of products of high quality.

It was not disputed that the rainwear sold by the defendants bears a cloth label in the usual place on the inside of the garment just below the collar, which reads:

"G O O D Y E A R
DE LUXE
By
Weatherite
Best in Rain
Made in Japan."

In addition to that label affixed to the garment, there is attached to each one a hanging tag which is longer. This bears the same legend on the upper portion of the tag. The remaining part reads:

"Protective
Clothing
S E A L E D
RAIN CLOTHING"

There is a space in which the style number and size is shown. On this hanging tag the word "Japan" is only at the bottom.

### Preliminary Analysis

The claim of the plaintiff that the defendants are engaging in unfair competition is based on two grounds:

1. Actual misrepresentation to customers that the goods obtained from Weather-Rite [1] are made out of materials manufactured by the plaintiff.

2. A more subtle variety of passing off by the presence of a label on each article which by inclusion of the name "GOODYEAR" imitates the plaintiff's tradename, leading customers to purchase Weather-Rite's rainwear believing that they are made of the plaintiff's goods.

### I. The affidavits relating to misrepresentations.

Affidavits from two Pinkerton agents who made purchases of the allegedly inferior goods of Weather-Rite from Topps stores specifically state the date, hour and location of defendants' stores where Weather-Rite rainwear was purchased. In each case, the affidavits state that a sales employee of the defendants represented that the materials in the Weather-Rite garments were manufactured by the plaintiff. Three of those employees are specifically named. Each has filed a counter-affidavit denying that such representations were made. In the remaining transactions, the employees of the defendants are not named, although each one is required to wear an easily read identification button with her name on it. Counter-affidavits by floor employees of the defendants, who apparently fit those

---

1. Weather-Rite Sportswear Co., Inc. is the corporate name of the defendants' supplier of the labeled merchandise.

descriptions, deny making such statements. All of the foregoing affiants for the defendants state that they had no knowledge of the source of the materials used to manufacture the raincoats and would not have made any representation. In accordance with the basic concept in the operation of discount stores where customers essentially serve themselves in selecting merchandise without the assistance of sales persons, the floor employees received neither training nor instruction with respect to the source of goods on sale.

*II. The claimed misrepresentation by use of the label.*

While the plaintiff does not assert misuse of a registered mark, it does claim that the presence of GOODYEAR in the label on the rainwear overtly misrepresents that the products sold by the defendants emanate from the plaintiff. The damage claimed to flow from this alleged misuse is two-fold: deprivation of sales of its own product; and, more importantly, damage to its reputation, since the quality of the material used in the coats is so poor as to generate customer dissatisfaction and frequent complaints.

 The arguments on this issue extended through a wide range of the subordinate criteria which a court must employ, see Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), in "balancing the *conflicting interests* both parties have in the unimpaired continuation of their trade mark use." Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 613 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). While the claim of the plaintiff does not depend solely on whether the plaintiff

has the incontestable right to use the name "GOODYEAR" by virtue of the provisions of the Lanham Act, 15 U.S.C. § 1065, the plaintiff's unfair competition claim based on its common law rights in its corporate name is governed by essentially the same general principles. Cf. Supreme Wine Co. v. American Distilling Co., 310 F.2d 888, 889, n. 2 (2d Cir. 1962). State courts generally consult "the entire body of law in this field, both the decisions of courts and the comments and conclusions arrived at by text-writers of reputation." American Safety Table Co. v. Schreiber, 269 F.2d 255, 270 (2d Cir.), cert. denied, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959), modified, 287 F.2d 417 (2d Cir. 1961). Where distinctive differences exist this court must apply those which have been adopted by the law of Connecticut. Flexitized, Inc. v. Nat'l Flexitized Corp., 335 F.2d 774, 780–781 (2d Cir. 1964).

For its bearing on two separate factors in this case—(1) the weakness of "secondary meaning" in the name "GOODYEAR," Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535 (1888);[2] See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); General Motors Corp. v. Cadillac Marine & Boat Co., 226 F.Supp. 716 (W. D.Mich.1964); and (2) the goodfaith, see Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp., 308 F.2d 196, 199–200 (2d Cir. 1962), of Weather-Rite, the defendants have shown that an application for registration of a trademark "GOODYEAR DE LUXE By Weatherite" was filed July 3, 1963, and assigned Serial No. 172,441 by the Patent Office. This mark was passed for issue and published for opposition on May 12, 1964. Several

2. The Supreme Court stated in Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., supra, 128 U.S. at 602, 604, 9 S.Ct. at 167, 168:

"But the name of 'Goodyear Rubber Company' is not one capable of exclusive appropriation. 'Goodyear Rubber' are terms descriptive of well-known classes of goods produced by the process known as 'Goodyear's Invention.' Names which are thus descriptive of a class of goods cannot be exclusively appropriated by any one."

"The designation 'Goodyear Rubber Company' not being subject to exclusive appropriation, use of terms of similar import, or any abbreviation of them, must be alike free to all persons."

petitions were filed thereafter by the plaintiff in that proceeding requesting the Commissioner of Patents to withhold the issuance of the registration. The Commissioner held these petitions to be without merit and denied them. A restraining order against the Commissioner of Patents was obtained by the plaintiff in an action brought under 5 U.S.C. § 1009. The determination of that case is now under advisement by Judge Jackson of the United States District Court for the District of Columbia.

As bearing upon two elements in the plaintiff's case: (1) the breadth and quality of its reputation; and (2) the harmful effects upon it of the inferior quality of products made by others than the plaintiff, the plaintiff introduced affidavits of the receipt of complaint letters and the letters. One was with reference to a "GOODYEAR Weatherite raincoat" purchased from Alexander's, Milford, Connecticut. Another was with reference to a GOODYEAR DE LUXE man's rain suit to go hunting in. No indication of where this was purchased appears other than from the writer's address, Cape Elizabeth, Maine. One referred to an allegedly defective rubber inflated boat bearing the label "GOODYEAR DE LUXE By Weatherite" purchased in Johnstown, New York. Another, from Michigan, did not refer to Weatherite. One from Hershey, Pennsylvania, did. Finally, one from New Jersey referred neither to any label or the place of purchase.

Upon the foregoing statement of the case developed at the hearing before me, it is apparent that important issues of fact were raised by the pleadings and affidavits, as were questions of law which cannot be determined until factual issues have been resolved. Readily noticeable among these are the questions of the existence of any "secondary meaning" in the name "GOODYEAR," and, if so, whether it is "strong" or "weak" and whether the defendants' sale of the labeled goods would be likely to cause confusion. See generally, Developments in the Law-Trade Marks and Unfair Competition, 68 Harv.L.Rev. 814.

■ Connecticut's law governs here. Middletown Trust Co. v. Middletown Nat'l Bank, 110 Conn. 13, at 20–21, 147 A. 22, at 25, states:

"No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived. 38 Cyc. p. 779; Nims on Unfair Competition and Trade-Marks (3d Ed., 1929) p. 249. 'Whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; * * * the extent of the confusion which may be created or apprehended, and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy.' Chas. S. Higgins Co. v. Higgins Soap Co., 144 N.Y. 462, 469, 39 N. E. 490, 492, 27 L.R.A. 42. See also Hygeia Distilled Water Co. v. Hygeia Ice Co., 72 Conn. 646, 45 Atl. 957, 49 L.R.A. 147. If the court finds that the effect of appropriation by one corporation of a distinctive portion of the name of another is to cause confusion and uncertainty in the latter's business, injure them pecuniarily and otherwise, and deceive and mislead the public, relief will be afforded. Daughters of Isabella No. 1, v. National Order, Daughters of Isabella, 83 Conn. 679, 684, 78 Atl. 333, and cases cited; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278. It is not sufficient that some person may *possibly* be misled, but the similarity must be such that any person, with

such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other."

See Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955, 960 (2d Cir.) (opinion of Judge Frank on rehearing), cert. denied, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452 (1943). In a recent reaffirmation of the principles laid down in Middletown Trust Co. v. Middletown Nat'l Bank, supra, 110 Conn. 13, 147 Atl. 22, the Supreme Court of Errors made it clear that they were to be strictly applied. In Yale University v. Benneson, 147 Conn. 254, 159 A.2d 169 (1960), which upheld the denial of an injunction sought by Yale University against the use of "Yale" in Yale Motor, Inc., a motel operator at Wallingford, Connecticut, the court stated at 257, 159 A.2d at 171 that: "The confusion of which a court takes cognizance must be something more than the result of carelessness or ignorance upon the part of the uninformed."

### The Temporary Injunction Remedy

■■ It is well-settled that unless there is a clear showing of probable success and possible irreparable injury to the plaintiff, the extraordinary remedy of a preliminary injunction will not be granted. Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc., 299 F.2d 33, 1 A.L.R.3d 752 (2d Cir. 1962).

#### A. Probable success.

Under the first half of the test, the questions of credibility presented by the affidavits and counter-affidavits relating to actual passing off by conduct of the several defendants' employees leave that issue in doubt. More formidable is the issue of passing off by use of the word "GOODYEAR" in the label on the goods. This central issue bristles with questions of law and fact.

There has not been a clear showing of probable success by the plaintiff.

#### B. Irreparable injury.

This half of the test presents for consideration some recent correspondence between Weather-Rite Sportswear Co., Inc., who make the raincoats bearing the allegedly offending label, and the plaintiff. On December 24, 1964, two days after the present complaint was filed, Weather-Rite's president wrote to the plaintiff:

"Dear Sir:

"It has become apparent to us that your company is using its vast economic power and resources to engage in a campaign to injure and destroy our business.

"In furtherance of this campaign, you have, among other things, made demands upon some of our customers, in various parts of the United States, to remove our goods from sale and you have instituted actions against some of our customers for allegedly passing our goods off as a product of your company.

"We have no information of any passing off, and do not concede that any such passing off ever occurred. However, we intend to place the following legend on our goods:

'A product of Weather-Rite Sportswear Co., Inc., not in any manner connected with The Goodyear Tire and Rubber Company or any other Goodyear company'.

"This changeover will result in considerable expense to us. We therefor request your immediate comment with regard to same.[3]

"We, of course, reserve all of our rights in connection with the foregoing."

3. It has been held that the public interest in avoiding deception is satisfied by prominent labeling to disclose the true source.

Kellogg Co. v. Nat'l Biscuit Co., 305 U.S. 111, 121, 59 S.Ct. 109, 83 L.Ed. 73.

To this letter, the plaintiff's house counsel replied on January 7, 1965, as follows:

"Dear Sir:

"Your letter of December 24, 1964, addressed to Mr. V. Holt, Jr., President, has been referred to me.

"Let me first assure you that the only 'campaign' in which we are engaged is a continuing one to protect our legitimate interest in our name and good will, and I emphasize that to this we are dedicated.

"With regard to the legend you propose to use in connection with your goods, it will not, in our opinion, eliminate the problem. It is our view that nothing short of the elimination of the use of GOODYEAR in connection with your merchandise will suffice."

In the same vein, the named defendants, through their counsel, informed the court that they have notified all store employees in writing that the Weather-Rite labeled rainwear is manufactured by a company having no connection with the plaintiff and that no material manufactured by the plaintiff is contained in any of those products.

Other suits like this one have been instituted by the plaintiff in widely separated areas of the United States against other retailers, e. g., in Seattle, Kansas City and Minneapolis. In addition to its present conduct in active opposition to the issuance of a registered trademark in Weather-Rite, the plaintiff has also been active as a vicarious protector of the ultimate purchasers of Weather-Rite rainwear by presenting information to the Federal Trade Commission for use in a proceeding brought by it against Rettinger Raincoat Manufacturing Co., 53 F. T.C. 132 (1956), which imports the rainwear distributed by Weather-Rite from Japan. A consent decree ordered Rettinger to desist from "Using the name 'Goodyear' unless in immediate connection therewith the name of the person . . . manufacturing such merchandise and the fact that such person . . . is the manufacturer thereof, is clearly and conspicuously revealed." (53 F.T.C. at 133)

The plaintiff itself has not yet sought to come directly to grips with either Weather-Rite or Rettinger. In deciding whether the extraordinary remedy of a preliminary injunction should be granted before liability has been adjudged, a court must consider that

"* * * it cannot be equitable for a well-informed merchant with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of a court decree, much that the competitor has striven for and accomplished—especially in a case where the most that can be said is that the trade-mark infringement is a genuinely debatable question." Valvoline Oil Co. v. Havoline Oil Co., 211 Fed. 189, 195 (S.D.N.Y. 1913).

Dwinell-Wright Co. v. White House Milk Co., 132 F.2d 822, 824–25 (2d Cir. 1943); Polaroid Corp. v. Polarad Electronics Corp., supra, 287 F.2d at 497–498; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., 105 F.2d 908, 911 (2d Cir.), cert. denied, 308 U.S. 616, 60 S.Ct. 262, 84 L.Ed. 515 (1939). Cf. Stardust, Inc. v. Weiss, 79 F.Supp. 274, 278 (S.D.N.Y. 1948).

In the face of a manifestly sharpened consciousness of the alleged wrongs dating back to 1956, the absence of any sense of urgency is inconsistent with the likelihood of irreparable injury. If the plaintiff is content to delay a direct attack upon the continuing source of what it claims to be confusion created among its ultimate customers and dilution of its goodwill, there is little doubt that the reparability of its damage may be required to await the outcome of a trial. There has not been a clear showing that it will suffer irreparable injury.

There is also another side to the question. A series of temporary injunctions against retailer customers of Weather-Rite, whether selected capriciously or calculately by the plaintiff, apart from cir-

cumscribing the conduct of Weather-Rite before it has been adjudged to have committed any wrong, subjects the retailers thus selected to a Hobson's choice of foregoing competition with its own competitors or taking on what is obviously a burdensome law suit. Balanced against this is a handful of complaints from scattered places by consumers who bought rainwear obviously made in Japan at bargain prices in a discount retail store. These would seem to have but slight economic impact on the reputation of the plaintiff who does an annual business in the neighborhood of $2,000,000,000 a year.

The motion for a preliminary injunction is denied.