## The Middletown Trust Company *vs.* The Middletown National Bank.

First Judicial District, Hartford, May Term, 1929.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued May 17th—decided July 25th, 1929.

*Alvan Waldo Hyde* and *Wallace W. Brown,* with whom, on the brief, was *Ernest A. Inglis,* for the appellant (plaintiff).

*Bertrand E. Spencer,* for the appellee (defendant).

HINMAN, J. It is alleged in the original and supplemental complaints that the plaintiff, chartered by this State in 1909, since its organization has been engaged solely in the transaction of business as a trust company, and not as a general banking institution, has become widely known as such and as the only company heretofore so engaged in Middletown, and has built up a large and profitable trust business. Until the amendment of the Federal statutes in 1913, the defendant had no authority to transact business as a.trust company and for many years engaged solely in a general banking business. In May, 1928, a vote was passed by the stockholders of the defendant corporation to change the name from The Middletown

National Bank to The Middletown National Bank and Trust Company and, notice of this action having been presented to the Comptroller of the Currency, a certificate was issued, in July, 1928, that the name had been so changed and such change approved by the Acting Comptroller of the Currency.

Since this certificate was issued the defendant has commenced an extensive campaign of advertising in an effort to increase its business by the use of the name and style so adopted. This name "has so great similarity to that of the plaintiff as to lead to confusion in the minds of the public and to cause irreparable injury to the property rights and good will established by the plaintiff through the use of its name over a substantial period of years." "As a consequence of the action of the defendant in changing its name . . . many persons have been deceived as to the identity of the respective institutions, letters intended for the plaintiff have been sent to the defendant and there will be further confusion and injury to the plaintiff in the event defendant continues to make use of said name." "The use of a name likely to be confused with that of the plaintiff is not essential to the transaction by the defendant of its business as a national bank, having trust powers, and is an invasion of the plaintiff's established rights."

To this complaint the defendant demurred, on the following grounds: "1. The defendant is a national banking corporation existing and doing business solely under the acts of Congress of the United States and the name under which it performs its functions is subject solely to the control of the Federal government acting through the Comptroller of the Currency of the United States. 2. The confusion and resulting injury alleged by the plaintiff to exist as a result of the change in the defendant's corporate name is alleged to arise

solely out of the use in the defendant's name of the words 'Middletown' and 'Trust Company' and the alleged similarity in these particulars is not sufficient to form a basis for the relief sought by the plaintiff."

The court held that, the change having been made and approved in the manner provided by the Federal law, its use cannot be interfered with by any other authority, and sustained the demurrer.

Since national banks are instrumentalities of the Federal government, they are subject to the paramount authority of the United States. This authority extends to the name adopted for such a bank as well as the other incidents of its creation and of the conferring of its powers. Such bank may adopt any name which the Comptroller of the Currency approves. *Third National Bank of Baltimore* v. *Teal*, 5 Fed. 503, 505; *Swanson* v. *First National Bank of Burlington*, 74 Colo. 135, 137; 7 Corpus Juris, p. 762. No question is made that the change of name by the defendant was effected in the manner prescribed by the Federal statute and regulations. In the sense that it is the name conferred upon the corporation by the proper chartering powers, it is not open to alteration or impairment by a State or its officers. This is well illustrated by *Fidelity National Bank & Trust Co.* v. *Enright*, 264 Fed. 236, in which the right of the plaintiff bank to its name was upheld, notwithstanding a Missouri statute construed by the State authorities as not permitting corporations to assume the name of "Bank and Trust Company." It does not follow, however, that this principle avails to authorize or protect an unlawful or tortious use of a name, although it be lawfully chosen and approved. In *United States Lighting & Heating Co. of Maine* v. *United States Lighting & Heating Co. of New York*, 181 Fed. 182, 184, a suit to restrain the use by the defendant of its name, Judge

Hand says: "If it were true that, in giving a corporation a name, the executive of the State licensed it to use that name in any way it chose, of course no court would have power to interfere at all with the use of the name, and the charter would become a general license to use that name, whether or not the use proved tortious. The sounder view . . . is that the corporate name is merely given as the name which the entity may use so long as it acts in accordance with law. By that name so chosen it gets no license to commit what would otherwise be a tort. . . . The statute . . . merely authorizes the taking of a name when used lawfully." See also *Hudson Tire Co., Inc.* v. *Hudson Tire & Rubber Corporation,* 276 Fed. 59.

In *Peck Brothers & Co.* v. *Peck Brothers Co.,* 113 Fed. 291, involving the right of the plaintiff, a Connecticut corporation, to relief against the defendant, incorporated in Illinois, it was held that such incorporation did not protect the latter from the consequences of use of its corporate name in unfair competition. "In a certain limited sense the sovereignty of the State had conferred the name. There is, however, in the term 'sovereignty,' no magic to conjure by. It can confer upon individuals no right to perpetrate wrong. Nor do we think that the sovereignty of the State of Illinois sought to do that. It has a general law of incorporation, by which any body of men combining . . . may incorporate under any name they may select. The name is not imposed by law, but is chosen by the incorporators. With that selection the sovereignty of the State has nothing to do. The act of sovereignty allowing incorporation is permissive, not mandatory. It sanctions the act of incorporation under the name and for the business proposed, if that name and that business be otherwise lawful. The sovereign by the act of incorporation adjudges neither

the legality of the business proposed, nor of the name assumed. That is matter for judicial determination by a court having jurisdiction of the subject when the legality of the business or of the name is called in question. If one may not use the name imposed upon him *in invitum* so that it shall work a wrong to another, by what token may he become incorporated under a name selected by himself to effect a like wrong? And how is the sovereignty . . . impugned by the denial to incorporators of a right to perpetrate such a wrong?" (p. 300).

"Incorporators of a company choose a name at their peril. . . . They will be presumed to know the names under which the probable, existing competitors . . . are doing business. The choice of a name colorably similar to that used by a competitor, is evidence of fraud, especially if it is likely that the new corporation will profit by the confusion that will result from the similarity between its name and that of a competitor." Nims on Unfair Competition & Trade-Marks (3d Ed., 1929) p. 235; *National Circle, Daughters of Isabella* v. *National Order, Daughters of Isabella*, 270 Fed. 723, 732; *Juvenile Shoe Co., Inc.* v. *Federal Trade Commission*, 289 Fed. 57.

In *Daughters of Isabella, No. 1,* v. *National Order, Daughters of Isabella*, 83 Conn. 679, 685, 78 Atl. 333, we say: "Assuming that the New York corporation has the right to do business here under its own name, it could not so use it as to violate the plaintiff's rights to their name first acquired. The law permitting this applies in all cases, as well where both corporations are domestic as where one or both are foreign."

The Federal statutes and decisions have rendered futile any attempt by a State to define the duties of national banks or control the conduct of their affairs whenever such attempted exercise of authority ex-

pressly conflicts with the laws of the United States and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies to discharge the duties for the performance of which they were created. *First National Bank of Bay City* v. *Union Trust Co.,* 244 U. S. 416, 37 Sup Ct. 734; *Easton* v. *Iowa,* 188 U. S. 220, 23 Sup. Ct. 288; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664, 19 Sup. Ct. 537; *Fidelity National Bank & Trust Co.* v. *Enright,* 264 Fed. 236; *First National Bank of Louisville* v. *Commonwealth,* 76 U. S. (9 Wall.) 353, 362. Nevertheless, national banks remain subject to such State regulation and control as is not discriminatory in favor of local institutions which are, in a sense, in competition with them, and which does not interfere with the purpose of their creation, tend to impair or destroy their efficiency as Federal agencies, or conflict with the paramount laws of the United States affecting such banks. *First National Bank of San Jose* v. *California,* 262 U. S. 366, 43 Sup. Ct. 602; *First National Bank of Bay City* v. *Union Trust Co., supra; First National Bank in St. Louis* v. *Missouri ex rel. Barrett,* 263 U. S. 640, 44 Sup. Ct. 213.

Attempts on the part of the State, by legislation, administrative action, or judicial decision, to deprive national banks of trust or other powers such as are exercised by State institutions, which have been involved in most of the decided cases, to escheat unclaimed deposits, as in *First National Bank of San Jose* v. *California, supra,* or to defeat the right of a national bank to sue in its corporate name or require it to sue in a different name (as in the illustration cited in *Thomas* v. *Farmers Bank of Maryland,* 46 Md. 43, 52) present a real conflict of authority, and the right conferred by the Federal laws must prevail. There is an obvious distinction, however, between such cases and

the application of principles such as those protecting against unfair competition, to which all corporations, of whatever nature and wherever and by what authority incorporated, are amenable. The considerations which we have quoted as to the unlawful or tortious utilization of names adopted under State charters or incorporation statutes seem in no respect inapplicable to corporations chartered by or under the Federal government and we find nothing, in law or reason, to emancipate a national bank from a just submission to and observance of such common and universal limitations upon the employment of a name. Therefore, the first ground of demurrer should have been overruled.

This conclusion necessitates consideration of the second ground. No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived. 38 Cyc. p. 779; Nims on Unfair Competition & Trade-Marks (3d Ed., 1929) p. 249. "Whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; . . . the extent of the confusion which may be created or apprehended, and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy." *Chas. S. Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462, 469, 39 N. E. 490, 27 L. R. A. 42. See also *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.*, 72 Conn. 646, 45 Atl. 957. If the court finds that the effect of appropriation by one corporation of a distinctive portion of the name of another is

to cause confusion and uncertainty in the latter's business, injure them pecuniarily and otherwise, and deceive and mislead the public, relief will be afforded. *Daughters of Isabella, No. 1,* v. *National Order, Daughters of Isabella,* 83 Conn. 679, 684, 78 Atl. 333, and cases cited; *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Mfg. Co.,* 37 Conn. 278. It is not sufficient that some person may *possibly* be misled but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other. *International Trust Co.* v. *International Loan & Trust Co.,* 153 Mass. 271, 278, 26 N. E. 693, 10 L. R. A. 758.

Under the complaint, fairly construed, it is not the mere adoption of the changed name, or the name itself, of which the plaintiff complains, but the consequences of the appropriation of a name so similar to that of the plaintiff and its employment in the defendant's business, in competition with the plaintiff, that, it is alleged, confusion as to their identity is created, the public misled, and the plaintiff injured. If the facts which are provable under the allegations of the complaint would support the cause of action relied upon, the demurrer must fail. *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 649, 139 Atl. 106. Whether the plaintiff can establish, by its proof, the cause of action alleged is not before us at this time. Nor are we called upon to determine the extent or form of relief which could be granted without invading such rights of the defendant as are inherent in it by reason of its incorporation under the Federal law and the powers thereby conferred upon it. We are unable to hold, as a matter of law, that the consequences which might be proven by the plaintiff, under the allegations of its supplemental complaint, as accruing from the simi-

larity of corporate names, could not be such as to entitle it to relief under the principles above stated. Therefore the defendant could not prevail upon its second ground. The demurrer should have been overruled.

There is error, the judgment is set aside and the cause remanded to the Superior Court to be proceeded with according to law.

In this opinion the other judges concurred, except HAINES, J., who dissented.