THE YALE & TOWNE MANUFACTURING COMPANY *vs.* CHARLES M. ROSE ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued May 7th—decided June 27th, 1935.

*Raymond E. Hackett*, with whom was *Lewis H. Porter* of New York, for the appellant (plaintiff).

*Josiah H. Peck*, for the appellees (defendants).

HAINES, J. The plaintiff is a corporation under a special charter from the Legislature of this State. For more than seventy years it has developed a world-wide

business in the manufacture and sale of locks, hardware and other fabricated articles, and many years ago adopted and has since continuously and universally used the word "Yale" as its trade mark on its products, identifying such products and its business entirely by the word "Yale." This business has been one of increasing volume, which in the aggregate has amounted to about $300,000,000; in 1929 it was $18,000,000. Its principal office and manufacturing plant is located at Stamford in this State, with branches in other cities both in this country and abroad. It now manufactures approximately fifty thousand different articles and markets them widely throughout the world. A large proportion of the jobbers and .wholesalers in the hardware trade carry and sell its products, and a substantial amount of its business consists in the sale thereof in a large number of cities and towns in this State, and it has been from the start identified with a high type of workmanship and quality. It has registered the word "Yale" as its trade mark in the patent office in Washington and in practically every country in the world. This trade mark has been used and stamped upon articles manufactured by it to indicate their origin, and it has prominently displayed the word, not only upon its articles of manufacture, but on the cartons and wrappings thereof and in its catalogs and advertising matter. It is a distinguishing part of its corporate title and has been used in its advertising to the extent of approximately five and one-half million dollars; such advertisements have been widely disseminated throughout the United States and foreign countries, and the general public and the trade have recognized and do recognize its products by the name of "Yale" as being of high quality. The right of the plaintiff

thus acquired, to use the word "Yale" as indicated, is a substantial and valuable right.

The defendants, Yale Rose and Charles M. Rose, are brothers and own and operate a small store on Front Street in the city of Hartford, in which they retail hardware, house furnishings, plumbing and electrical supplies, wall papers, paints, varnishes and sundry other articles. They commenced business in 1924 on Front Street and at that time filed a certificate of registration of the trade name "Yale's Hardware Store" in the town clerk's office at Hartford. The trial court found that Yale Rose, the elder of the two brothers, was the "dominating influence in the business." This is challenged by the appellant, but the evidence justifies this finding as a reasonable inference from the evidence as to the way the business was begun and continued. The defendants have no authority from or connection with the plaintiff, nor any right to use its name in merchandising or marketing hardware. The store is located in a portion of the city which is occupied largely by a foreign-born population, mostly Italian, and its business is almost entirely drawn from this class of people.

The defendant Yale Rose has been doing business on Front Street since 1910, and before the present store was established, had become known in that vicinity as "Yale" and by no other name. The name "Yale's Hardware Store" was adopted in order to identify the store and its location in that part of the city where he was known as "Yale." This latter finding is claimed by the appellant to be without evidence to support it. While it is true it is not stated as a fact in the defendant's testimony, it does appear that he, being known by the name of "Yale," this name "Yale's Hardware Store" was adopted. It certainly had the effect of indicating that this was Yale Rose's store and

in the absence of specific testimony upon this point we deem it a reasonable inference that this was at least one of the purposes for which the name was adopted. There is no evidence of any other purpose.

The name "Yale's Hardware Store" has been displayed by the defendants upon a sign over the front of the store, and the same name appears in the Hartford telephone directory, and the word "Yale's" appears on their letterhead in slightly larger type over the words "Hardware Store." This letterhead comes to the attention of only such persons as they have occasion to correspond with in their business. Between thirty-five and forty per cent of their business comes to them by orders over the telephone. Most of the customers ask for the article they desire without respect to the maker of the article, and almost none of them specify articles manufactured by any particular concern.

The appellant takes exception to the findings of the trial court that the defendants have not sought or intended to mislead the public or any individual into believing that their store is one owned, conducted or authorized by the plaintiff, that plaintiff's products are sold therein, or to confuse the public in this respect, but that their business has been and is a fair and honest use of the Christian name of Yale Rose to attract business from those who know him by that name. The evidence of record contains no direct testimony bearing upon the defendants' intentions or motives in employing the name complained of. These intentions and motives are questions of fact. An examination of the pleadings shows that the plaintiff's complaint charges the defendants with adopting the name "for no other reason or purpose than to secure for the defendants the value of the good-will and name of the plaintiff," and that the use of the name "was

done and intended to be done by the defendants in such a way and in such a manner as to be wholly a cause of confusion in the minds of the purchasing public and to induce such public to believe that the store of the defendants was maintained or authorized by the plaintiff and that the plaintiff is responsible for articles sold and services performed therein, to the plaintiff's damage" and that "each and all of the acts and doings of the defendants . . . are all knowingly and fraudulently designed and calculated to defraud and secure to the defendants the benefit of the goodwill of the plaintiff's business and to induce users and purchasers of the locks, keys and hardware and other articles to believe the same to be the business or the well-known product and workmanship of the plaintiff." Met, as these allegations are, by a general denial in the answer, a direct question of fact is raised as to the motives of the defendants with the resulting burden of proof upon the plaintiff. The adverse conclusions of the trial court now excepted to are conclusions reached from all the testimony. They amount to a finding that the plaintiff has not sustained its burden of proof in this respect and will be so considered by this court. "The case stands upon an answer denying the material allegations and claims of the complaint, and in so far as the Superior Court omitted to find true the allegations and claims of the plaintiff, those allegations and claims must be regarded as not proved." *Rogers & Brothers* v. *Rogers,* 53 Conn. 121, 147, 1 Atl. 807.

Exception is also taken to the finding of the trial court that while the association of the word "Yale" with goods of the type manufactured by the plaintiff and the conjoining of them with the word "Hardware" in a business title, would ordinarily have a tendency to confuse the public as contended by the plaintiff, yet

the use made of the word "Yale's" by the defendants has not actually done so or caused any injury to the plaintiff, nor is it reasonably probable that it will do so in the future. This likewise is a conclusion reached upon an issue raised by plaintiff's own affirmative claims and the defendants' general denial. The complaint alleged that these acts of the defendants were done "to the plaintiff's great·loss and injury, and to the deception, loss and injury to the public." The evidence of the plaintiff does not sustain the burden of proof of these allegations and we take the conclusion of the trial court as a finding to that effect. Moreover, it appears from the evidence that this is a small retail store selling many articles in which the plaintiff can have no interest and where the course of dealing indicates clearly that the customers do not ask for the plaintiff's products as such. In the absence of any evidence of actual confusion or injury, it is not an unreasonable conclusion that this plaintiff corporation has not suffered injury and that the public has not been confused or deceived. The finding does show a single instance where a letter from Louisiana addressed "Yale Hardware Company, Hartford, Connecticut" with an accompanying package, was delivered to the defendants' store but was found by the latter to be intended for the plaintiff and so was promptly forwarded to the plaintiff by them; but that there were many other variously misdirected letters which had been received by the plaintiff. Until the plaintiff received this letter it had never heard of the defendants' store. This instance shows no confusion of the two names. There is nothing to indicate, and it is in the highest degree improbable, that the sender of the letter ever heard of the defendants' store. It does not appear that anything the defendants did or failed to do had any relation to the misdirection of this letter.

The appellant claims sixteen paragraphs of its draft-finding should be incorporated in the finding. Seven of these are to the effect that the acts of the defendants did in fact tend to confuse and deceive the public. As above stated, the trial court found that while there might be such a tendency if the word "Yale" were combined with "Hardware Store," confusion and injury had not in fact taken place as a result of using the word "Yale's" as the defendants had used it. Five of these paragraphs set forth that there was no evidence whatever as to why the defendants' name was adopted. This claim is covered by what has already been said in considering the finding. The essential portions of the other four paragraphs are already included in the finding.

The appellant's brief clearly states the real issue upon this appeal: "Upon the established facts is the plaintiff entitled to an injunction restraining the defendants from using the word "Yale's" as part of their adopted trade name "Yale's Hardware Store?"

The plaintiff argues and cites many authorities to sustain the proposition that the plaintiff has acquired a right to the use of the word "Yale," and is entitled to enjoin the use of that word in that trade by anyone else whose name is not "Yale." We do not understand that this proposition is disputed. The question here, however, is whether the defendant Yale Rose can use his Christian name "Yale" in the possessive form upon this hardware store and otherwise in that business.

The plaintiff strenuously contends that he has not that right, buttressing the argument with an elaborate citation of authorities. We do not find the general rule as to the use of one's own name in business, anywhere stated more clearly than in the case of *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169, 187, 16 Sup. Ct. 1002: "This fact is fully recognized by the well settled doc-

trine which holds that although 'everyone has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name.' . . . Where the name is one which has previously thereto come to indicate the source of the manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications."

In *Horlick's Malted Milk Corporation* v. *Horluck's, Inc.*, 59 Fed. (2d) 13, 15, the rule is stated in this wise: "As a general proposition, a person has a right to use his own name in connection with any business which he carries on honestly. . . . But where a personal name has become associated in the minds of the public with certain goods or a particular business, it is the duty of the person with the same or similar name, subsequently engaging in the same or similar business or dealing in like goods, to take such affirmative steps as may be necessary to prevent his goods or business from becoming confused with the goods or business of the established trader."

The rule as thus stated limits the right of one in the use of his own name in business somewhat more strictly than in the early decisions in this State which undoubtedly conformed to the generally accepted

judicial view of that time. Thus in *Rogers & Brothers* v. *Rogers,* supra, at page 156, we said: "The cases seem to require some element of false representation other than that implied in the fair, honest and ordinary use of a person's own name. An examination of the following and kindred cases wherein the use of a person's name has been regulated, will show that in most instances conscious, intentional fraudulent misrepresentation on the part of the defendant has been resorted to; in others, there was such a combined use of the name with other marks, characteristics, figures, or form and arrangement of circulars, advertisements, etc., as to amount to a false representation, and the combination only was enjoined. No instance can be found where the use of the name only, in good faith, has been stopped. . . . Upon the other hand there has been, from the first to the present time, a general consensus of judicial opinion that the use of a personal name in a fair, honest and ordinary business manner, could not be prevented, even if damage resulted therefrom," citing many cases.

The trend of judicial opinion toward a greater strictness in the rule was noted in the case of *Waterman Co.* v. *Modern Pen Co.,* 235 U. S. 88, 35 Sup. Ct. 91, where, at page 94, the court said: ". . . the defendant lays hold of language in *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118 [25 Sup. Ct. 609], and in other books, to the effect that courts will not interfere with the use of a party's name 'where the only confusion, if any, results from a similarity of the names and not from the manner of the use.' But whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already

established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake."

Our own recognition of this tendency to a stricter rule is illustrated by the more recent case of *Middletown Trust Co.* v *Middletown National Bank,* 110 Conn. 13, 147 Atl. 22, wherein we held that we could not say as matter of law that the consequences alleged by the plaintiff if established by proof could not be such as to entitle it to relief; that whether the results feared by the plaintiff were justified and their rights invaded was a question of fact to be decided on the evidence. "No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact." (p. 20) The rule thus stated in the foregoing decisions is not perhaps strictly applicable to the present case because the name "Yale" is a first name, while the business is not that of Yale Rose alone, yet the rule serves to indicate in general the right of a man to the use of his own name for the store in the absence of proof of such facts as would justify relief to the plaintiff.

The position we have taken and to which we adhere is that the condition of a plaintiff's right to an injunction in a case of this kind depends upon the proof of the allegations of his complaint as to the consequences of the use of the name in question by a defendant. The importance of this feature of the case has led us to refer to the finding at some length. As that finding stands it is apparent that neither the plaintiff's charges of fraudulent and improper motives nor the allegations of actual injury to the plaintiff and confusion to the public, are sustained.

Possibly anticipating this result, the appellant has

filed a supplementary brief, basing its claim upon a proposition stated in Nims on Unfair Competition: "Acts constituting a threat to good will. A defendant's course of conduct which, while not resulting in immediate injury to the plaintiff's business, nevertheless constitutes a threat or menace to the plaintiff's goodwill, may be enjoined. . . . In such a case, it is not essential for the plaintiff to show actual damage." Nims (3d Ed.) § 16a.

The defendants contend that under the complaint and answer in the present case the issues are confined to improper motive on the part of the defendants and a resulting actual confusion and injury to the public and to the plaintiff. Without discussing the validity of that contention we recur to the finding as explained and amplified in the memorandum of decision. The facts there appear that the defendants' store is a small and comparatively obscure establishment; that it sells many other articles than those in which the plaintiff is interested; that only the possessive form of the word "Yale" is used on the store or elsewhere; that it is obviously intended to show only that that store is the one at which the defendant Yale Rose is doing business; that the word "Yale's" was not used as a label for goods of any kind and could not reasonably be so understood, but its only purpose was to mark the store as such; that there can be no competition in manufacture because the defendants do not manufacture and the plaintiffs are not retail dealers; that the defendants have no inquiry for the plaintiff's goods as such; and that its customers are not interested in the name of the manufacturer. These and other features of the case to which we might refer make it clear to us that the use which is made by the defendants of the possessive form of the name "Yale" cannot reasonably be said to constitute a threat or menace to the good-

will of the business of the plaintiff, and the trial court was justified in finding facts which negative this claim.

This result renders it unnecessary to discuss any of the subordinate issues raised by briefs of counsel.

Upon the whole record, we concur in the conclusion which the trial court reached, that as the word "Yale's" is now used by the defendants, no dishonest purpose or ulterior motive on their part has been established and that there has not been and cannot reasonably be expected to be any unfair competition with or injury to the plaintiff or deceiving of the public or threat to the plaintiff's good-will.

There is no error.

In this opinion the other judges concurred.