The Wah Mei Company is a Connecticut corporation manufacturing and selling chop suey, chow mein, and other articles of food commonly regarded, by the American public, as Chinese dishes. At the present time the chief public figure in the plaintiff concern is one Max Golub, whose knowledge of China and Chinese is limited to the manufacture of chop suey and chow mein. Until 1934, the defendant Mah G. Goon was a member of the plaintiff concern, and it is fair to assume that he, not only gave it its name, but its Chinese flavor as well; at least it is safe to assume that Max Golub contributed neither of these. Then followed a receivership according to the American style, and Max Golub found himself the owner of a concern bearing a Chinese name, and the defendant found himself "on the outside looking in", as the Americans would say. His oriental tenacity and optimism, however, guided him in the formation of a competing firm under the name of Wah Hing Company — meaning Chinese Prosperous Company — which in itself is evidence of his optimism.
The plaintiff in this action, asks that the defendant Mah G. Goon be restrained from using the prefix "Wah" on the ground that it confuses, or is likely to confuse, or tends to confuse, the public in its dealings with the two concerns. It also claims that the defendant has adopted the name of Wah Hing Company for the fraudulent purpose of capitalizing upon the plaintiff's established good will and business reputation.
"Wah" is the Chinese word for beautiful or flowery. Because the Chinese believe their land is beautiful and flowery, they also use it to designate China or the Chinese. "Mei" means America, and the combination of the words Wah Mei Company means Chinese American Company. The word "Hing" means prosperous, or abundance, and the combination of words Wah Hing Company means Chinese Prosperous Company. The Chinese business men seldom, if ever, use a firm name bearing the actual names of the owners. They usually select a combination of words which, in Chinese, has a beautiful sound and meaning, and regard it as an omen of good luck. The word "Wah" is frequently used in a business which intends to convey some connection with China or the Chinese people. Perhaps a fair analogy would be the use of the word "American" by local firms. It is interesting to note that the *Page 52 
Hartford Telephone Directory has forty three firms listed beginning with the word "American". Perhaps the word itself has no particular business significance, but it is, apparently, intended to convey the idea of bigness, and is readily adaptable to various enterprises. It, therefore, draws heavily upon one's imagination — or upon the equity powers of the Court — to be asked to say to a Chinaman that he cannot use a Chinese word describing his business, which is regarded as Chinese, and commonly used by Chinese firms, unless the evidence clearly discloses fraud and confusion which would be prejudicial to the moving party.
The only evidence offered by the plaintiff to prove confusion is the testimony of Golub himself and his bookkeeper, that people called on the telephone asking why orders which they never gave it were not delivered. The inference to be drawn is that the orders were given to the defendant concern, and the complaints for tardy deliveries made to the plaintiff. It also appears that the defendant's prices were lower than the plaintiff's, and customers who bought from the defendant complained to the plaintiff when they were charged higher prices, they being under the impression that their former purchases at lower prices had been made from the plaintiff.
Such evidence, if properly presented, might weigh heavily with the Court in finding existing confusion. As presented, however, it is largely hearsay and self-serving, with no opportunity to the defendant to cross-examine the customers themselves to find out from them whether they were really confused or merely thoughtless. It cannot be said that "Wah Mei" and "Wah Hing" sound alike. The two names ought not to be confused. If they are, it is only because Americans, not stopping to think, would confuse any Chinese names, regardless of their prefixes. The Plaintiff's Exhibit A bears that out rather definitely. This exhibit was introduced by the plaintiff to show that an express shipment intended for the defendant was actually delivered to the plaintiff. The delivery slip was plainly marked with the defendant's name and address at 45 Market Street, and yet the driver delivered it to the plaintiff at Windsor Street. This was mere stupidity and carelessness rather than confusion. Or, perhaps, it bears out the Court's idea that Americans make no effort to distinguish between Chinese names — and that all Chinese names sound alike to them. The defendant should not, however, be punished for such mental laziness. *Page 53 
The plaintiff presented no evidence in support of its allegations of fraud. It apparently rests its case entirely on the theory of confusion. This is always regarded by courts as a question of fact, and in the instant case, the plaintiff's evidence falls far short of establishing that fact.
 "No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived.
 It is not sufficient that some person may possibly be misled but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other. Middletown Trust Co. vs. Middletown National Bank, 110 Conn. 13."
Certainly the plaintiff's evidence fails to meet the requirements laid down in the above case. It would be difficult, in the instant case, to find either fraud or confusion in the public mind, or that the public was actually deceived with resultant injury to the plaintiff.
The case of Yale Towne Mfg. Co. vs. Rose,120 Conn. 373, seems applicable in this case in view of what the Court believes to be the facts.
 "the position we have taken and to which we adhere is that the condition of a plaintiff's right to an injunction in a case of this kind depends upon the proof of the allegations of his complaint as to the consequences of the use of the name in question by a defendant. The importance of this feature of the case has led us to refer to the finding at some length. As that finding stands it is apparent that neither the plaintiff's charges of fraudulent and improper motives nor the allegations of actual injury to the plaintiff and confusion to the public, are sustained." Yale Towne Mfg. Co. vs. Rose, supra.
It is possible that a complete trial of the case might reveal *Page 54 
evidence which would warrant or require the Court to find that the plaintiff has sustained the burden of proof of the allegations in his complaint. Up to this point, however, no such finding is warranted, and it would obviously be unjust to the defendant to temporarily disrupt his business by withholding from him the right to use the name under which he has developed it.
 The motion for a temporary injunction is, therefore, denied.