EYE ASSOCIATES, P.C. d/b/a Connect-
icut Eye Center and Connecticut Eye
Surgi-Center, Plaintiff,

v.

CONNECTICUT EYE PHYSICIANS &
SURGEONS, P.C., Robert L. Lesser,
Stanley B. Hersh, Andrew J. Levada,
and Lawrence Thornton, Defendants.

Civ. No. N–86–368 (TFGD).

United States District Court,
D. Connecticut.

Feb. 9, 1987.

Ronald J. St. Onge, Gene S. Winter, St. Onge Steward Johnston & Reens, Stamford, Conn., for plaintiff.

Stewart I. Edelstein, Richard L. Albrecht, Cohen & Wolf, Bridgeport, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

DALY, Chief Judge.

*Background*

Plaintiff brought suit on October 23, 1986 alleging defendants' use of the name Connecticut Eye Physicians & Surgeons, P.C. infringes plaintiff's tradenames Connecticut Eye Center and Connecticut Eye-Surgi Center. Such use, plaintiff claims, constitutes unfair competition under Connecticut statutory and common law and violates federal trademark law. On November 20, 1986, the Court heard argument on defendants' motion to dismiss and, on December 4, 1986, denied the motion on the present record. Now pending is plaintiff's motion for a preliminary injunction for which the Court heard evidence on December 18, 1986. Having reviewed the post-hearing and pre-hearing memoranda, the deposition transcripts submitted at the hearing as part of the record, and all of the evidence, the Court ORDERS that a preliminary injunction enter on plaintiff's common law unfair competition claim [1] pending final disposition of the matter.

## DISCUSSION

In September, 1985, plaintiff Eye Associates purchased from Dr. Leon Zucker the Connecticut Eye Center and Connecticut Eye Surgi-Center, a professional eye care practice located in Waterbury, Connecticut

---

**1.** The Court, having entered a preliminary injunction on plaintiff's common law claim, need

not address at this time the remaining claims upon which plaintiff seeks relief.

and Stamford, Connecticut. Pursuant to an agreement between plaintiff and Dr. Zucker, Dr. Zucker assigned plaintiff all right, title, and interest in and to the trade-names "The Connecticut Eye Center" and "The Connecticut Eye Surgi-Center" and, further, turned over to plaintiff the respective business telephone numbers appearing in the yellow pages and in various other advertisements.

At the time of the acquisition, the names Connecticut Eye Center and Connecticut Eye Surgi-Center had been extensively advertised for at least three years throughout Connecticut and out-of-state regions adjoining Connecticut, although it appears Dr. Zucker had used the name Connecticut Eye Center since at least 1978. *See* Deposition Transcript (hereinafter "Dep.Trans.") of Dr. Ruchman at 38–39, Affidavit of Dr. Ruchman at 6, appended to plaintiff's memorandum in support of motion for preliminary injunction, Affidavit of Andrew N. Glad, appended to plaintiff's opposition to defendants' motion to dismiss filed November 18, 1986. Dr. Zucker's clientele of approximately four thousand included residents of Connecticut, Massachusetts, New York, New Jersey, Pennsylvania, Florida, Virginia, Rhode Island, Washington, D.C., Texas, Maine, Vermont, Maryland, New Hampshire, California, Colorado, Kentucky, Louisiana, and Puerto Rico and residents of foreign lands, as well. Affidavit of Marie Mongelluzzo, appended to Plaintiff's opposition to defendants' motion to dismiss. Dr. Ruchman, an owner of the plaintiff practice, testified that the good will Dr. Zucker had established in the names Connecticut Eye Center and Connecticut Eye Surgi-Center constituted the most important asset acquired in the sale.

To announce the relocation of the Connecticut Eye Center and Connecticut Eye Surgi-Center, plaintiff sent announcements to approximately four-thousand of Dr. Zucker's former patients and expended approximately $10,000 for an open house. Numerous newspaper articles and advertisements, as well, publicized plaintiff's ac-

quisition of Dr. Zucker's practice, Connecticut Eye Center and Connecticut Eye Surgi-Center. At least two of the defendant physicians, either through the media, general conversation, or through an invitation to the open house, were aware of the acquisition. Dep.Trans. of Dr. Lesser at 62–63, Dep.Trans. of Dr. Levada at 75–76, Dep. Trans. of Nancy Cimino at 61–62.

Since September, 1985, plaintiff has initiated an $80,000 advertising campaign promoting the name Connecticut Eye Surgi-Center and has placed the names Connecticut Eye Center and Connecticut Eye Surgi-Center in phone books throughout Connecticut and Westchester County, New York.[2] It appears that further plans for promoting the Connecticut Eye Surgi-Center will now proceed in light of the United States Department of Health and Human Services having recently approved the Surgi-Center as an ambulatory surgical center. As of December 18, 1986, plaintiff's practice, inclusive of Dr. Zucker's former practice, encompassed approximately forty-thousand patients, with the Waterbury facility serving approximately three hundred patients a day. While evidence admitted at the hearing indicates that plaintiff may not have advertised the names Connecticut Eye Center and Connecticut Eye Surgi-Center as widely as other names by which plaintiff is known, the Court finds credible Dr. Ruchman's testimony that there is a necessary time period in which to integrate an acquired name. Clearly, plaintiff has an interest in promoting the well-established Connecticut Eye Center and Connecticut Eye Surgi-Center for which plaintiff paid a considerable sum.

In April or May, 1986, the defendant physicians changed the name of their practice Ophthalmic Surgical Associates to Connecticut Eye Physicians & Surgeons, P.C. The defendant Dr. Lesser testified that he was aware of Dr. Zucker's use of the names Connecticut Eye Center and Connecticut Eye Surgi-Center and knew of plaintiff's acquisition of Dr. Zucker's prac-

---

**2.** The Court will not cite the plethora of advertisements placed by both Dr. Zucker and plaintiff. Many of the advertisements or lists of advertisements are of record and are incorporated by reference herein.

tice, but did not think the new name would cause confusion. Initially, receptionists at the defendant practice answered the phone "Connecticut Eye", but upon plaintiff's initiation of the instant suit, the receptionists were instructed to answer the phone "Connecticut Eye Physicians & Surgeons." On August 15, 1986, the defendants advertised the new name Connecticut Eye Physicians & Surgeons and, on August 10, 1986, advertised that Dr. Thorton, formerly of Dr. Zucker's practice, had joined the defendant practice. In both the yellow and white pages, the defendant practice is listed immediately between the plaintiff's Connecticut Eye Center and the plaintiff's Connecticut Eye Surgi-Center.

Subsequent to the change in name of defendants' practice, many instances of actual confusion between the plaintiff's practice and the defendants' practice have occurred. Numerous patients have called plaintiff's practice seeking the defendant practice or doctors associated with the defendant practice. Other patients have visited plaintiff's facility intending to visit defendants' facility. It appears that patients seeking to call defendants' practice have received the phone number for plaintiff's practice from directory assistance operators. When Connecticut Eye Physicians & Surgeons advertised free glaucoma screenings, plaintiff received numerous phone inquiries regarding the free screenings. Plaintiff has also received mail addressed to the defendant physicians or to Connecticut Eye Physicians & Surgeons, and plaintiff's receptionist testified that even more recently, phone calls for the defendant practice have become more frequent than immediately following the name change. Implicit in the testimony on behalf of the plaintiff is that the defendant practice, as well, has been receiving misdelivered mail and a substantial number of misdirected phone calls.

The defendant Dr. Lesser and defendant practice employees, however, deny there have been numerous misdirected phone calls or misdeliveries at defendants' facility. The defendants' office manager admitted to receiving one phone call for the Connecticut Eye Surgi-Center, the caller having received the wrong number from directory assistance. Dr. Lesser, as well, indicated the defendant practice has received phone calls for personnel of Eye Associates or the Connecticut Eye Center or the Connecticut Eye Surgi-Center. Dep. Trans. of Dr. Lesser at 56–57. At least two checks directed to the plaintiff Eye Associates were received at the defendant practice. Otherwise, testimony on behalf of the defendants indicates very few instances of confusion since the name change.

Dr. Ruchman, seeking to explain some of the confusion, testified that any number of eye conditions might cause a patient with restricted vision to see only "Connecticut Eye" when looking in the phone book for a number. As a result, a patient with vision impairment might mistakenly call any one of the three practices so listed, despite an intent to call a particular practice. Other instances of confusion, plaintiff alleges, are due to the substantial similarity between the names of the defendant and plaintiff practices. Such confusion, Dr. Ruchman testified, will only serve to harm the plaintiff practice. The defendant Dr. Lesser testified, for example, that the free glaucoma screenings serve to promote good will, but Dr. Ruchman testified that any association between the free screenings and the plaintiff practice would denigrate plaintiff's reputation for quality eye care. Dr. Ruchman further testified to the importance of distinguishing plaintiff's practice from other practices in that plaintiff has made a major commitment to comprehensive eye services while the defendants have not. Dr. Ruchman and at least one other doctor have left the plaintiff practice for up to a year for further training in such areas as reconstructive surgery. Also, the Connecticut Eye Surgi-Center is the only surgical center in the Waterbury area which has expended the hundreds of thousands of dollars necessary to perform surgery at its own facility. Plaintiff has expended great sums to expand and advertise its practice, such that Dr. Ruchman testified it is only fair that the plaintiff's names be distinguished in the public's mind. Dr. Ruchman

knows of no other professional eye practice other than the defendant and plaintiff practices using the prefix "Connecticut Eye". Plaintiff's assistant administrator Nancy Cimino expressed a concern that the confusion is damaging to the plaintiff in that patients could end up in the wrong facility and could be treated by someone other than whom they intended to see. Dep. Trans. of Nancy Cimino at 65. Dr. Ruchman also indicated he "may never know all the instances of confusion, and thus, we [Eye Associates] may never know the patients that we have lost." Dep.Trans. of Dr. Ruchman at 121.

The defendant Dr. Lesser, however, testified that he has been very fortunate in his practice in that he has never had to go after another doctor's practice. His testimony indicates there is a very long waiting list of patients for the defendant practice. The defendants' officer manager also indicated that the defendant practice is "not looking for business." Dep.Trans. of Carol Andrea Brunhoezl at 55. Dr. Lesser stated that he has "attempted to practice medicine by not thinking about competition," Dep. Trans. of Dr. Lesser at 52, but further testified that if the defendant practice's name was to be changed, the defendants' good will would be harmed. The public perception would be that they are unstable. The name is important, Dr. Lesser testified, because it symbolizes a high quality practice and represents good will.

The Second Circuit requires for issuance of a preliminary injuction that the moving party show (a) either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the moving party *and* (b) possible irreparable injury. *Caulfield v. Board of Ed. of City of New York*, 583 F.2d 605, 610 (2d Cir.

1978). The Court will address each requirement *seriatim.*

## PROBABLE SUCCESS ON THE MERITS

The Court finds that plaintiff has made a sufficient showing of probable success on the merits of its common law unfair competition claim. Neither recent case law nor statutory enactments have eroded the common law cause of action for unfair competition set forth in *Middletown Trust Co. v. Middletown National Bank,* 110 Conn. 13, 147 A. 22 (1929).

> No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact.... The test is whether the public is likely to be deceived. 'Whether the Court will interfere in a particular case must depend upon the circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; * * * the extent of the confusion which may be created or apprehended, and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy.'
>
> If the Court finds that the effect of appropriation by one corporation of a distinctive portion of the name of another is to cause confusion and uncertainty in the latter's business, injure them pecuniarily and otherwise, and deceive and mislead the public, relief will be afforded. It is not sufficient that some person may *possibly* be misled, but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other.

*Id.* at 20, 21, 147 A. at 22 (citations omitted); *see also Shop-Rite, Etc. v. Mott's Shop Rite of Norwich,* 173 Conn. 261, 377 A.2d 312 (1977); *Yale University v. Benneson,* 147 Conn. 254, 159 A.2d 169 (1960).[3]

---

**3.** Plaintiff argues that at common law unfair competition does not require proof of established reputation or secondary meaning. Although *Middletown Trust* does not speak to the issue, at least one federal court has interpreted state law to require "proof of an established reputation by the plaintiff at the time the de-

fendant first used the name or a similar name. [There must be] some showing of a secondary meaning or general reputation in reference to the use of a certain name in a specific area." *Federal Glass Co. v. Loshin,* 126 F.Supp. 737, 740 (D.Conn.1954), *aff'd* 224 F.2d 100 (2d Cir.1955).

Plaintiff has provided ample evidence that a person seeking eye care and exercising reasonable care would likely mistake one practice for the other. Dr. Ruchman's testimony indicates that any number of eye conditions might cause a person looking in the phone book for plaintiff's practice to call any one of the practices listed with the prefix "Connecticut Eye" and, thus, to call perhaps defendants' practice. This might be especially true where, as here, the defendant practice's name Connecticut Eye Physicians & Surgeons appears directly between the plaintiff practice's names Connecticut Eye Center and Connecticut Eye Surgi-Center. The substantial similarity between the names of the plaintiff practice and defendant practice buttress a finding that a person exercising reasonable care is likely to be deceived so as to mistake one practice for the other.

Further, there is an identity of business between the two practices in that plaintiff appears to provide all of the eye care services which the defendants provide. While the testimony indicates plaintiff's practice may be more comprehensive than that of the defendant, it is undisputed that both are professional eye care practices located in Waterbury, Connecticut, with the plaintiff having an additional office in Stamford, Connecticut. The fact that both plaintiff and defendants can be found in the same city further supports plaintiff's case.

Finally, the record reflects numerous instances of actual confusion, further satisfying the inquiry suggested by *Middletown Trust*:

> The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff.

*Middletown Trust*, 110 Conn. at 20, 147 A. at 25. The plaintiff has received numerous phone calls for the defendant practice. Directory assistance, presumably trained to distinguish between businesses with similar names, has also confused the two practices. Patients have visited plaintiff's facility intending to visit defendant's facility, and mail has been misdelivered at both practices. For purposes of the instant motion, the plaintiff has made a sufficient showing that the public has been deceived and is likely to be deceived in the future by the defendants' use of the name Connecticut Eye Physicians & Surgeons. Accordingly, the Court finds plaintiff has met its burden of showing probable success on the merits of its unfair competition claim.[4]

---

Without deciding whether proof of established reputation or secondary meaning is a required element at common law, the Court finds to the extent necessary that plaintiff has made a sufficient showing of established reputation for purposes of injunctive relief. Clearly, plaintiff has priority in use of the prefix Connecticut Eye in Connecticut. At the time of plaintiff's acquisition of Dr. Zucker's practice, at least four thousand patients had come to associate Connecticut Eye Center and Connecticut Eye Surgi-Center with eye care. Plaintiff has since the acquisition publicized the relocation of Dr. Zucker's practice and has initiated a considerable advertising campaign. The acquired names appear in numerous Connecticut and Westchester County, New York phone books. Dr. Ruchman testified that the goodwill Dr. Zucker had established in the names Connecticut Eye Center and Connecticut Eye Surgi-Center constituted the most important asset acquired in the sale. For purposes of injunctive relief, the Court finds there is sufficient proof of an established reputation in Connecticut for the names Connecticut Eye Center and Connecticut Eye Surgi-Center at the time in which defendant began using the name Connecticut Eye Physicians & Surgeons.

4. Alternatively, the Court finds there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips decidedly in plaintiff's favor. It appears from the record that the defendants are not looking for business and, in fact, have a long waiting list of prospective patients. Requiring the defendant practice to discontinue use of its present name pending trial, then, imposes no great hardship in that defendants have a list of both patients and prospective patients to facilitate notification of a name change. It is unlikely a name change pending the ultimate disposition of this matter would cause such damage to defendants' good will so as to cause them to exhaust their long waiting list.

Additionally, defendants were well aware when selecting a name for their practice of Dr. Zucker's and plaintiff's use of the names Connecticut Eye Center and Connecticut Eye Surgi-Center. "[B]efore selecting a tradename or a trademark, it is desirable to ensure that the name being considered is not confusingly similar to any tradename previously used in this state by another." Costas, *Unfair Competition*

IRREPARABLE INJURY

The Court also finds plaintiff has made a sufficient showing of irreparable harm.

> Irreparable harm is a *sine qua non* for issuance of a preliminary injunction, and proof of inadequacy of a legal remedy is a *sine qua non* when showing irreparable injury.

*Capital Cities Communications, Inc. v. Twentieth Century Fox Film Corp., et al.,* N–83–464, slip op. at 6–7 (D.Conn. October 18, 1983) [Available on WESTLAW, DCT database] (citations omitted). Numerous instances of confusion have already occurred. Dr. Ruchman indicated he "may never know all the instances of confusion, and thus, we [Eye Associates] may never know the patients that we have lost." Dep.Trans. of Dr. Ruchman at 121. Dr. Ruchman further indicated that while defendants' free glaucoma screenings may serve to generate good will for defendants, any association between plaintiff and the free screenings only serves to denigrate plaintiff's reputation for quality eye care. The Court finds that such association has already occurred, given the inquiries plaintiff has received for free screenings. Further, it is likely defendants have enjoyed some of the fruits of plaintiff's extensive advertising in light of the confusion which already had been documented as of December 18, 1986. Absent injunctive relief, there is no basis for determining how many patients plaintiff may lose between now and final disposition of this matter or to what extent plaintiff's good will and reputation may be harmed. If plaintiff ultimately prevails at trial, any legal remedy would be wholly inadequate in that there is no sufficient basis for calculating money damages. *See Ideal Toy Corp. v. Chinese Arts & Crafts, Inc.,* 530 F.Supp. 375 (S.D. N.Y.1981); *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971). Accordingly, the Court finds preliminary injunctive relief appropriate on plaintiff's unfair competition claim.

Until further order of the Court or ultimate disposition of the above-captioned matter, it is hereby ORDERED that defendants, their agents, servants, employees, attorneys, representatives, assigns and any and all persons, firms, associations, and corporations holding or acting by, for or through them are preliminarily enjoined from in any way using or employing the name Connecticut Eye Physicians & Surgeons or the prefix Connecticut Eye in Connecticut [5] in connection with the selling, offering for sale, advertising for sale, promoting or other commercialization of medical services and services related thereto.

---

and *Unfair Trade Practices—Transplants to the Unfair Trade Practices Act,* 54 Conn.Bar Journal 405, 413 (1980). The hardship to plaintiff, on the other hand, for defendants having selected the name Connecticut Eye Physicians & Surgeons is evident, absent injunctive relief. *See infra* text 389.

5. *See Federal Glass v. Loshin,* 224 F.2d 100, 102 (2d Cir.1955) ("Although the exact territorial extent of a trade name is a question of fact, the narrowest limit that could reasonably be imposed today would be that of a state.").